STATE OF NORTH CAROLINA, on RELATIONSHIP OF THE EMPLOYMENT SECURITY COMMISSION OF NORTH CAROLINA, v. CHAMPION DISTRIBUTING COMPANY, INC., 118 MARKET STREET, WILMINGTON, N. C., EMPLOYER NO. 55-65-022.

(Filed 25 May, 1949.)

**1. Master and Servant § 58—**

The provisions of the Employment Security Act classifying and designating those persons who are subject to the provisions of the Act, rather than the common law definition of the relationship of master and servant, are controlling when not capricious or unreasonable.

**2. Master and Servant § 62—**

The findings of fact of the Employment Security Commission are conclusive upon review when there is any competent evidence or reasonable inference from such evidence to support them. G.S. 96-4 (m).

**3. Master and Servant § 61—**

The burden is upon the employer to show to the satisfaction of the Employment Security Commission that persons performing services come within the exceptions enumerated in subsections A, B and C, G.S. 96-8 (g) (6).

**4. Master and Servant § 58—Evidence held to support finding that defendant's salesmen were "employees" within definition of Employment Security Act.**

The evidence tended to show that the services performed by defendant's salesmen were in the usual course of defendant's business, that goods were loaded on the salesmen's cars on defendant's premises, and the unsold goods returned there, that the salesmen were bonded, were allotted territory by defendant, were not permitted to sell any competitor's merchandise, paid no license or sales tax, were reported as employees in Federal returns, and taxes deducted from the pay roll, and were required to turn in all money for goods sold and were paid weekly on a commission basis. *Held:* The evidence supports the finding of the Employment Security Commission that the salesmen were "employees" within the meaning of G.S. 96-8.

DEFENDANT's appeal from *Nimocks, J.,* April Term, 1948, of NEW HANOVER Superior Court. No error.

This proceeding is prosecuted by the State *ex rel.* the Employment Security Commission, against the defendant as employer, to enforce con-

tribution under the State Employment Security Act, G.S., Chapter 96, (see Public Laws, 1947, Chapter 598, changing name), with respect to the alleged employment of eight or more persons, under conditions named in the statute, during the year 1946.

During that period the respondent was, and now is, a corporation having its principal place of business in Wilmington, North Carolina, engaged in the wholesale, and to some extent, in 'the retail business of selling automobile supplies, radios, sporting goods, and general merchandise. The proceeding was instigated by the report of a Field Representative of the Commission suggesting that it appeared that the Distributing Company, as an employing unit, had eight or more persons employed in its service during the year 1946, rendering it liable under the law for contribution or tax, with respect to said employment.

On notice to the respondent Distributing Company a hearing was had, at which respondent appeared with counsel, to determine the liability or non-liability of the Company for the tax; and evidence was taken.

The inquiry, in fact and by stipulation in the record, narrows down to the question whether certain distributing or route salesmen, selling and distributing goods and merchandise of the respondent, were employees as defined in the statute, and contemplated by it, or independent factors or consignees, handling the respondent's wares on a purely commission basis, inconsistent with the concept and legal definition of employment, as an independent business.

For convenience, relevant provisions of the statute, intended to arrive at an answer to the question here presented, are quoted below. The provisions are definitional, intended to present in more positive form, by way of analysis,—inclusion and exception,—the criteria which, in the statutory sense, must be considered in determining liability as an employing unit, or non-liability because of an independent status.

The quoted provisions of the statute are here given for comparison with the summary of the evidence immediately following, and with the findings of fact:

"96-8 (m)   From and after March 10, 1941, 'wages' means all remuneration for services from whatever source . . ."

"96-8 (n)   From and after March 10, 1941, 'wages' shall include commissions and bonuses and the cash value of all remuneration in any medium other than cash . . ."

These principles are comprehended succinctly in the following:

"Section 96-8 (g) (6) (A) (B) (C):

"(6) Services performed by an individual for remuneration shall be deemed to be employment subject to this chapter unless and until it is shown to the satisfaction of the Commission that:

"(A) Such individual has been and will continue to be free from control or direction over the performance of such services, both under his contract of service and in fact; and

"(B) Such service is either outside the usual course of the business for which such service is performed, or that such service is performed outside of all the places of business of the enterprise for which such service is performed; and

"(C) Such individual is customarily engaged in an independently established trade, occupation, profession, or business."

The evidence taken on the hearing may be summarized as tending to show:

1. The persons handling the respondent's products were assigned territory by the defendant.

2. They did not sell any competitor's goods, but were required to sell no goods except those received from the respondent. Sometimes, as a matter of accommodation, and at request, they brought in some small needed article, but for no profit, when making a trip, but never anything in competition with goods sold by respondent.

3. Field sellers and distributors were bonded.

4. The field men were remunerated for their service at a commission rate, determined by the respondent on a wholesole price, fixed by him. No part of the sales price, or commission, was retained by these salesmen, that is, all the money received was turned over to the respondent, and payment was made direct to them by it weekly.

5. The respondent deducted from the sums paid to each of the field representatives the withholding tax as required by the Federal Government and filed report as required; reporting the old-age benefit and social security tax for each of the salesmen.

6. The field representatives, or salesmen, came in to respondent's place to get the merchandise and return that unsold after each trip.

7. The merchandise remained that of the respondent until sold. That taken out, and that sold, listed;—two lists made, one given to the customer and one brought back in to the respondent. "When we check the merchandise in against that and what they have left, together with the receipt that they have sold should equal the amount of merchandise that they take out." (Isadore Swartz.)

8. The testimony of Ann Williams was to the effect that these parties (the salesmen) were carried on the "payroll" to keep out of trouble, on account of unfamiliarity with the laws of various tax collecting offices. However, they made the deductions and withheld tax from the amounts earned by the route salesmen, issuing the forms to the individuals re-

quired by the Federal practice, (W-2), of the withholding tax. The payments were not made to the men as they made trips, but weekly.

9. When necessary, the respondent sent a "trouble shooter" to straighten out difficulties occurring in the field.

As there is no challenge to the correctness of the procedure a more formal history of the case may be omitted. The evidence above summarized is that upon which the Commission acted in making its findings of fact, conclusions of law, and final orders.

Following its regular course the matter came to the final hearing before the Commission on July 18, 1947, and on August 20 following, the Commission made its findings of fact, concluded that respondent was liable for the contribution, or tax, as an employer of eight persons or more, subject to the Act, during the year 1946, and until the relationship should be terminated as provided by statute; and ordered that the respondent, as employer, report and pay contributions on all wages and remunerations received by individuals performing service for it during the period in question.

The findings of fact, omitting those merely formal, were as follows:

"3. These salesmen sell goods of the employing unit to dealers, garages, and service stations and other establishments located within a radius of 75 or 100 miles of Wilmington, North Carolina, this merchandise being sold by the individuals under the following arrangement between the salesmen and Champion Distributing Company, Inc.:

"a. The salesmen load merchandise on trucks at the employer's premises at which time an inventory is made of the goods loaded on the trucks.

"b. The salesmen cannot give credit to customers and must sell the merchandise for cash.

"c. The salesmen usually report back to the employer the next morning after loading the truck or car or two or three days after taking the merchandise out, at which time a check is made as to the goods sold and the salesmen pay the employer for all merchandise which is not returned.

"d. The salesmen are not permitted to sell any competitive line of merchandise of the employer.

"e. The merchandise remains the property of the employer until sold by the salesmen.

"f. The salesmen are paid a commission on merchandise sold, this commission varying according to the particular type of article sold.

"g. The employer fixes the commission earned by the salesmen, and the wholesale price at which the articles are sold by the salesmen.

"h. The salesmen are issued checks weekly by the employer for the services performed, based on a commission on sales as above stated.

"i. The salesmen own their cars and pay their own expenses.

"j. The employer deducts withholding tax and old age and survivors' insurance taxes on the net earnings of the salesmen.

"k. The salesmen are assigned a certain designated territory or route by the employer where the goods are sold.

"l. The salesmen work hours of their own choosing and are not required to work any definite hours by the employer.

"m. Salesmen are bonded by the employer.

"n. The salesmen do not pay any wholesaler's tax on goods sold by them, and do not pay any license or privilege tax to the city, county, or state.

"o. When a route or territory becomes vacant, the employer gives the oldest salesman in point of service the preference of the territory or route if he desires it.

"p. The employer has at least one individual who is paid upon a salary basis, and at times commission, who performs the same type of service as is performed by the other commission salesmen. This individual operates an employer-owned truck, and at times covers territory for which there is no salesman available."

The defendant filed exceptions to all the material findings of fact and to the conclusions of law, and to the final order. On the hearing these exceptions were overruled, and the defendant appealed, assigning as error the objections and exceptions theretofore made.

On the hearing before Judge Nimocks in the Superior Court, as indicated above, the judgment was affirmed, and defendant appealed.

*W. D. Holoman, R. B. Billings, and D. G. Ball for Employment Security Commission of North Carolina, appellee.*

*Aaron Goldberg, John M. Walker, and Rountree & Rountree for defendant, appellant.*

SEAWELL, J. Opposing counsel have stipulated that if the salesmen engaged in distributing the merchandise of the defendant in assigned territory should be classed as employees within the meaning of the statute, the Distributing Company, in that event, having as many as eight employees in its service, would be liable to the contribution; otherwise not. To determine the character or status of the field salesmen in that respect —whether employees or independent contractors, or consignees of the goods they sell, we can not any longer resort wholly to ordinary terms,

often themselves wanting in precision, and leaving the *criteria* of employment too nicely balanced. The cited sections of the Employment Security Act, intended to give a clearer legal concept of the incidence of the tax, constitute the dictionary of the law, which must be observed.

The distinctions and classifications, when not capricious and unreasonable, are within the legislative discretion. We do not understand that the power of the Legislature to make categories by which the statute applies its analytical definitions to employment is questioned. That power has been upheld and the formula here applied has been approved in *Unemployment Compensation Commission v. Jefferson Standard Life Insurance Co.,* 215 N.C. 479, 2 S.E. 2d 584, and again in *Unemployment Compensation Comm. v. Insurance Co.,* 219 N.C. 576, 14 S.E. 2d 689, and it is made plain that the statute, in its definitions, does not strictly adhere to the implication of the master-servant relation—although in the instant case that relationship might consistently be inferred.

Accepting the statute as it stands, the defendant contends that the evidence does not warrant the findings of fact which bring it under the law.

Here we may be reminded that on this review we are, by the statute, bound by the findings of fact when there is any competent evidence or reasonable inference from such evidence to support them, G.S. 96-4 (m). Conclusions of law based upon them may, of course, involve a matter of interpretation.

A comparison of the findings with the evidence before the Commission convinces us that in all material aspects the findings are supported by the evidence, in which respect only are they subject to review. Referring to the approach to a classification of these salesmen under the cited provisions of the law, we have no doubt that under the findings of fact, and the supporting evidence, they are properly declared to be employees, effecting liability of the defendant, under the provisions of this section. The burden is, by the statute, (consonant with the general rule), put on the defendant to show to the satisfaction of the Commission that those performing this service come within the exceptions provided in subsections A, B, C.

The Commission held that on the facts the defendant did not bring itself within the exceptions because, among other things, the salesmen were not free from direction or control of the defendant in the performance of the contract for service; that the service was not outside the usual course of business carried on by defendant, and, indeed, not performed wholly outside the place of business of the enterprise carried on by it, since the goods were loaded on the premises, unsold portions returned there, and check up and payment of remuneration made there.

On the question of control it is pointed out that the salesmen were not permitted to sell except for cash; not permitted to sell any competitor's line of merchandise; were assigned certain designated territory in which to work; gave bond to account for merchandise handled by them. It is also pointed out that these salesmen have no established business independent from the relationship between them and defendant, and paid no license or sales taxes, only peddling or selling the wares of defendant in the territory assigned by him, under the restrictions mentioned—for a remuneration, of course, but in furtherance of defendant's enterprise rather than their own. They were reported as employees in Federal returns and taxes deducted from the pay roll, and withheld by the defendant as required with respect to employees.

We think the view taken by the Commission is inescapable on the facts presented; and so holding, the case needs no further elaboration, *arguendo*.

What is said in the cited cases does not need repetition. We find no error in the record. The judgment of the Superior Court is

Affirmed.