STATE OF NORTH CAROLINA, Ex REL. EMPLOYMENT SECURITY COMMISSION OF NORTH CAROLINA, v. R. M. KERMON, SR., AND R. M. KERMON, JR., TRADING AS WILMINGTON PLUMBING & HEATING COMPANY, WILMINGTON, NORTH CAROLINA.

(Filed 7 July, 1950.)

**1. Master and Servant § 62—**

Review of exceptions to the findings of the Employment Security Commission is limited to determining whether the findings are supported by any competent evidence, and the Superior Court may not disregard a finding and substitute its own finding in lieu thereof. G.S. 96-4 (m).

**2. Same—**

While the determination of whether defendant was an employing unit within the purview of the N. C. Employment Security Law may be a mixed question of law and fact, the courts may not interfere with the conclusion of the Commission if it is supported by any competent evidence.

**3. Plumbing and Heating Contractors § 2—**

The license required by G.S. 87-21 is for those who install, alter, or restore plumbing, and is not required for the dismantling of plumbing.

**4. Master and Servant § 57—**

Evidence to the effect that general contractors engaged in the demolition of buildings hired a licensed plumber to dismantle the plumbing in such buildings supports a finding of the Employment Security Commission that the plumber so hired was engaged in the usual business of the contractors, and therefore was an employing unit subject to contributions under G.S. 96-8 (f) (8), prior to repeal.

**5. Master and Servant § 59c—**

In an action by the Employment Security Commission to determine liability of defendant for contributions under the Act, the defendant may not raise the question of the constitutionality of the statute under which the Commission levied the assessment in question, it being required in order to raise this defense that he pay the contributions under protest and sue for recovery. G.S. 96-10 (f).

**6. Administrative Law § 5—**

Where a statute provides a procedure before an administrative body for the recovery of a tax or assessment levied under the act, the asserted

defense of the unconstitutionality of the statute under which the assessment was made cannot be heard by the courts until the procedure before the administrative body is exhausted.

APPEAL by plaintiff from *Grady, Emergency Judge,* at September Term, 1949, of NEW HANOVER.

This is a proceeding brought by the Employment Security Commission of North Carolina against R. M. Kermon, Sr., and R. M. Kermon, Jr., trading as Wilmington Plumbing & Heating Company, Wilmington, N. C., to determine the liability of the defendant employing unit under G.S. 96-8 (f) (8) of the Employment Security Law, which subsection became effective 13 March, 1945, and was repealed 18 March, 1947.

Briefly stated, the facts found by the Hearing Commissioner and the Full Commission are as follows:

1. The defendant partnership, hereinafter called company, has never had as many as eight employees for as many as twenty different weeks within a calendar year.

2. During the period under consideration the defendant company installed plumbing for certain individuals and corporations engaged in general contracting, but by stipulation, it is agreed there is no liability by reason thereof for contributions by the defendant. The defendant's liability, if any, is in connection with the dismantling of plumbing.

3. "During 1946 the said company entered into contracts or agreements with certain employing units to perform services for such employing units, and did perform services for them for remuneration, which services constituted a part of the usual trade, occupation, profession or business of the employing units. Such employing units were: John A. Johnson & Sons; M. Shapiro & Son Construction Company; Steinly-Wolfe, Inc.; C. H. Reisdorf, Inc.; Roth-Schenker Corporation; W. B. Gibson & Company, and Hanagan Brothers. The services performed by the said company for the respective employing units hereinbefore named in this finding of fact were over a short period of time, and the company did not perform services for the named employing units for as many as twenty different weeks within the calendar year 1946, or up until March 18, 1947." (Finding of Fact No. 6.)

4. "All of the employing units hereinabove referred to in Findings of Fact Nos. 6 through 13 were liable to the State of North Carolina by reason of Section 96-8 (f) (6) of the General Statutes of North Carolina because of their liability under the Federal Unemployment Tax Act. For each of such employing units the said Wilmington Plumbing & Heating Company performed services for remuneration and such services consisted of removing plumbing and heating fixtures from the buildings which the respective employing units named in Findings of Fact No. 6

were dismantling, and the removal of plumbing fixtures was a necessary part of the business of dismantling buildings." (Finding of Fact No. 14.)

5. Findings of Fact seven through thirteen include the detailed information as to the time the company performed services for remuneration in 1946 for the respective concerns named in Finding of Fact No. 6, while they were engaged in dismantling buildings at Camp Davis, N. C.

In the light of these findings and the provisions contained in the Employment Security Law prior to 18 March, 1947, an order was entered to the effect that the defendant company was an employer within the meaning of the Employment Security Law from 1 January, 1946, to 18 March, 1947, and directing the defendant to report and pay contributions on the wages of all individuals performing services for it during that period.

The defendant company excepted to Finding of Fact No. 6, and appealed to the Superior Court on the ground, as it contends, that there is no evidence to support the finding that plumbing work was a part of the usual trade, occupation, profession or business of the principal contractors for whom the defendant company rendered services.

His Honor found facts contrary to those found by the Commission, and which were to the following effect: That the government required the general contractors to employ a licensed contractor in the State of North Carolina to do this "plumbing and heating" work in conformity with Chapter 52 of the Public Laws of 1931, and since the general contractors were not so licensed, the dismantling, wrecking or removing the plumbing fixtures constituted no part of the usual trade, occupation, profession, or business of the general contractor, consequently judgment was entered reversing the order of the Commission, and the plaintiff appeals, assigning error.

*W. D. Holoman, R. B. Overton, and D. G. Ball for plaintiff, appellant.*
*R. M. Kermon for defendant, appellee.*

DENNY, J. The plaintiff is seeking to collect certain contributions from the defendant company which it contends are due under the so-called contractor's clause, formerly known as G.S. 96-8 (f) (8), now repealed and which reads as follows: " 'Employer' means (8) Any employing unit, which contracts with or has under it any contractor or subcontractor for any employment which is part of its usual trade, occupation, profession, or business, and each such contractor or subcontractor irrespective of the place of performance of contract; provided, the employing unit would be an employer by reason of any other paragraph of this subsection if it were deemed to employ each individual in the

employ of each such contractor or subcontractor for each day during which such individual is engaged in performing such employment. . . ."

If the removal or dismantling of plumbing fixtures constituted a part of the "usual trade, occupation, profession or business" of the general contractors (or any one of them) who were engaged in the demolition or dismantling of buildings at Camp Davis, then the defendant is liable for the contributions claimed by the plaintiff, otherwise not.

This appeal turns on whether or not there is any competent evidence to support the finding of fact to the effect that the work done by the defendant company did constitute a part of the "usual trade, occupation, profession or business" of the employing units.

The Employment Security Commission under the provisions of our Employment Security Law, G.S. 96-4 (m), has the power and duty "to determine any and all questions and issues of fact or questions of law that may arise under the compensation law . . . When an exception is made to the facts as found by the Commission, the appeal shall be to the Superior Court in term time but the decision or determination of the Commission upon such review in the Superior Court shall be conclusive and binding as to all questions of fact supported by any competent evidence." *Unemployment Compensation Com. v. Willis,* 219 N.C. 709, 15 S.E. 2d 4; *Employment Security Com. v. Roberts,* 230 N.C. 262, 52 S.E. 2d 890. Therefore, the trial judge was empowered to review the evidence and determine whether or not the finding of fact, to which the defendant excepted, was supported by any competent evidence, but he was not authorized to disregard any of the findings of fact of the Commission and to substitute his own findings in lieu thereof. G.S. 96-4 (m).

The general rule with respect to judicial review of findings of administrative agencies is discussed in 42 Am. Jur., Section 214, p. 634, *et seq.,* as follows: "The most commonly accepted standard governing the scope of judicial review rests on a distinction between reviewable questions of law and nonreviewable questions of fact. The analytical basis of this distinction is an attempted differentiation between the functions of an administrative tribunal and those of the court. In general, it is said to be the function of an administrative tribunal to determine the facts of a controversy on issues raised before it and to apply the law to those facts, while it is the function of the reviewing court to decide whether the correct rule of law was applied to the facts found, and whether there was evidence before the administrative tribunal to support the findings made. Consequently, it is said that the legal effect of evidence and the ultimate conclusions drawn by an administrative tribunal from the facts, as distinguished from its findings of primary, evidentiary, or circumstantial facts, are questions of law, particularly where the facts are not disputed and permit no dispute as to inferences to be drawn, the question

depending wholly upon the application of established legal principles to such facts."

In *Beach v. McLean,* 219 N.C. 521, 14 S.E. 2d 515, this Court, speaking through *Barnhill, J.,* said: "The Commission having found the facts in respect to the terms and conditions upon which McLean undertook the work of dismantling and salvaging the machinery purchased by defendant from Superior Yarn Mills, it settled the question of fact involved in the 'finding' or conclusion as to the nature and extent of the contract. Hence, the element of fact involved in the conclusion is settled. Both the court below and this Court are bound thereby. The only question presented is the legal status of McLean under the contract. The Commission's conclusion in this respect is reviewable. *Thomas v. Gas Co.,* 218 N.C. 429."

It would seem the determination of the Employment Security Commission that the appellee was engaged in work which constituted a part of the usual trade, occupation, profession or business of the general contractor was a mixed question of law and fact. Even so, in such instances, if there be any competent evidence to support the conclusion reached by the Commission, neither the Superior Court nor this Court may interfere therewith. *Lockey v. Cohen, Goldman & Co.,* 213 N.C. 356, 196 S.E. 342.

In the case of *Unemployment Compensation Com. v. Harvey & Son Co.,* 227 N.C. 291, 42 S.E. 2d 86, this Court, in passing upon the same question presented on this appeal, said: "The circumstances summarized, *supra,* from the evidence as incidents of the contract and their mutual dealings, are not directed to showing these relations and making available their common-law implications, but to the issue whether the contract was of the nature described in the statute. The judicial determination of that question must depend upon inferences fairly drawn from the evidence by those whose office it is to find the facts. We cannot say that the findings of the Commission are unsupported by evidence, or that they are inadequate to sustain the conclusions drawn from them."

Likewise, in the case of *Employment Security Com. v. Distributing Co.,* 230 N.C. 464, 53 S.E. 2d 674, in considering whether or not there was any competent evidence to support certain findings of fact, the Court said, "Here we may be reminded that on review we are, by the statute, bound by the findings of fact when there is any competent evidence or reasonable inference from such evidence to support them, G.S. 96-4 (m)."

In the instant case, there is evidence to the effect that the defendant company at various times in 1946 entered into contracts with general contractors, who were liable to the State of North Carolina for contributions under the Employment Security Law, to dismantle or take out plumbing facilities that the general contractors had theretofore con-

tracted to dismantle or take out under their respective contracts. It will also be noted there is no exception to Finding of Fact No. 14, to the effect that the defendant company performed services for the general contractors named in Finding of Fact No. 6, for remuneration and such services consisted of removing plumbing fixtures from buildings which the respective employing units were dismantling, and the removal of plumbing fixtures was a necessary part of dismantling buildings. Furthermore, one of the partners of the defendant testified, "I don't recollect what our contract stated in regard to the taxes and insurance to be paid by the employer that we were doing work for. If I am not mistaken I had to make up a payroll report and turn it over to them (the general contractors) for the time our men worked on the job. . . . The work was contracted for on a unit basis per house. The bids for the job were let out under government supervision. . . . We were paid directly by the contractors. We worked on these various jobs with these contractors."

The other member of the defendant partnership testified that his information was to the effect that the government required the general contractors to secure a licensed contractor in North Carolina to dismantle the plumbing fixtures in conformity with Chapter 52 of the Public Laws of 1931. This witness, however, further testified that he knew nothing of the contracts between the government and the general contractors except what was contained in his own contracts with them. And there is no evidence of any such requirement or information being contained in the defendant company's contracts. Moreover, there is nothing in the act referred to above that would indicate that it is necessary for a wrecking contractor to have a plumber's license to dismantle plumbing. The license required by G.S. 87-21 is to install, alter or restore plumbing.

The constitutionality of Chapter 52 of the Public Laws of 1931, regulating the plumbing and heating business, was upheld as a valid exercise of the police power to promote the health and safety of the people, in the case of *Roach v. Durham,* 204 N.C. 587, 169 S.E. 149. In discussing the Act, the Court said: "The manifest purpose of the law is to promote the health, comfort, and safety of the people by regulating plumbing and heating in public and private buildings. The business of putting into buildings tanks, pipes, traps, fittings and fixtures for conveying water, gas, and sewage requires proficiency and skill, the want of which is the source of epidemics, as the lack of proper heating is the source of danger, discomfort and disease. To require proficiency and skill in the business mentioned is, as this Court has said, an exercise of the police power 'for the protection of the public against incompetents and impostors.' " *S. v. Ingle,* 214 N.C. 276, 199 S.E. 10; *S. v. Mitchell,* 217 N.C. 244, 7 S.E. 2d 567.

We think when the evidence adduced in the hearing below is considered in the light of our decisions, it is sufficient to support the finding that the dismantling of plumbing was a part of the usual trade or occupation of the general contractors, engaged in the demolition or dismantling of buildings at Camp Davis within the meaning of the statute, G.S. 96-8 (f) (8). And it was not necessary to find that the general contractors were licensed plumbing and heating contractors, authorized to install, alter or restore plumbing and heating equipment in this or any other state. The question here as it was in *Unemployment Compensation Com. v. Harvey & Son Co., supra,* is simply this: Was the work done by the defendant company an integral part of the dismantling of the buildings at Camp Davis, which the general contractors had contracted to do? We think this question must be answered in the affirmative.

The fact that the defendant company was a specialist in its work and licensed by the State as a police regulation is not contrary to the position that it was engaged in employment which was a part of the usual trade, occupation, profession or business of the general contractors. This same question was raised in the case of *Willard v. Bancroft Realty Co.,* 262 Mass. 133, 159 N.E. 511, under a somewhat similar provision in a workmen's compensation act. The defendant was constructing an addition to a hotel, and the Workmen's Compensation Act provided for compensation for injured employees of independent or subcontractors who contracted to do "all or part of the work comprised in the job which a general contractor is carrying on," unless the work of the independent or subcontractor be merely ancillary or incidental to the work of the general contractor. It became necessary to remove a metal fire escape from the outer wall of the building. The general contractor employed a concern who was in the business of welding and cutting iron and steel beams by the use of acetylene gases. In holding the plaintiff was bound by the provisions of the Workmen's Compensation Act, and could not sue at common law, the Court said, "The welding and cutting of metal, although so distinct in character that they are done by contractors and men who do nothing else, are essential elements in the construction of buildings. Such work is not 'merely ancillary and incidental.' Unless it is done, the construction will be impossible. It is not rendered ancillary or incidental by the fact that it is done by a special method in a particular case."

In the instant case the mere fact that the general contractors sublet the removal of the plumbing fixtures to experienced plumbers, does not necessarily exclude the removal of such fixtures from being a part of their usual business in dismantling or wrecking buildings.

The appellee argues and contends the statute under which the Employment Security Commission levied the tax in question is unconstitutional.

The question of the constitutionality of the statute is not before us for decision. The Employment Security Law, in addition to right of appeal from the decision of the Commission, provides that a party who claims a valid defense to the contributions assessed, may pay the tax under protest and sue for its recovery. G.S. 96-10 (f). In the case of *Insurance Co. v. Unemployment Compensation Com.*, 217 N.C. 495, 8 S.E. 2d 619, *Barnhill, J.*, speaking for the Court, said : "Where an administrative remedy is provided by statute for revision, against collection, or for recovery of taxes assessed or collected, the taxpayer must first exhaust the remedy thus provided before the administrative body, otherwise he cannot be heard by a judicial tribunal to assert its invalidity. *Distributing Corp. v. Maxwell*, 209 N.C. 47, 182 S.E. 724; *Hart v. Comrs.*, 192 N.C. 161, 134 S.E. 403; *Maxwell v. Hinsdale*, 207 N.C. 37, 175 S.E. 847"; *Unemployment Compensation Com. v. Willis, supra.*

In our opinion the finding of fact challenged by the defendant was supported by competent evidence, and the plaintiff was entitled to an affirmance of the findings and conclusions reached by the Commission.

The judgment of the Superior Court is

Reversed.