IN THE MATTER OF: STATE OF NORTH CAROLINA ON RELATIONSHIP OF THE EMPLOYMENT SECURITY COMMISSION OF NORTH CAROLINA v. HENNIS FREIGHT LINES, INC., Box 612, WINSTON-SALEM, NORTH CAROLINA, EMPLOYER No. 42-35-025, DOCKET No. 925.

(Filed 4 June, 1958.)

**1. Master and Servant § 58—**

Whether a person is an employee or an independent contractor within the meaning of the N. C. Employment Security Law must be determined, by direction of the statute, according to the rules of the common law. G.S. 96-8.(g) (1).

**2. Master and Servant § 62—**

Findings of fact of the Employment Security Commission are conclusive on the courts when the findings are supported by competent evidence, G.S. 96-4 (m), but findings of the Commission to the extent that they are not supported by competent evidence are not conclusive.

**3. Master and Servant § 58—**

Whether the lessor driver, or an employee of the lessor driver, is an employee of the lessee under a trip-lease agreement in interstate commerce is to be determined by the provisions of the lease agreement and is a question of law.

**4. Carriers § 3—**

An interstate carrier is liable in damages for injuries to third persons caused by the negligent operation of equipment leased by it under a lease agreement for a trip in interstate commerce under lessee's franchise.

**5. Master and Servant § 58—**

In determining who are "employees" within the N. C. Employment Security Act, consideration is to be given to the interpretation placed upon the federal statute by the Supreme Court of the United States.

**6. Same—**

Where an interstate carrier leases a motor vehicle for a trip under its franchise by agreement stipulating that lessor should furnish the equipment and pay the driver's salary and fully maintain and service the equipment, in consideration of a lump sum payment, the driver of such leased vehicle, whether he be the lessor owner or an employee of the lessor owner, is not an employee of the lessee within the meaning of the N. C. Employment Security Act.

APPEAL by plaintiff from *Johnston, J.,* September 2, 1957, Regular Civil Term, of GUILFORD, Greensboro Division.

Proceeding in accordance with procedure prescribed by Employment Security Law, G.S. Ch. 96, commenced by notice issued April 20, 1954, to determine whether Hennis Freight Lines, Inc., hereinafter called Hennis, is liable for additional contributions alleged to be due

under said statute for the calendar years 1950, 1951, 1952 and the first three quarters of 1953.

Hennis is a common carrier of freight in interstate commerce under an I.C.C. franchise. It is an employing unit under said Employment Security Law. As such, it reported and paid all contributions due on wages paid to employees on its payroll, including the operators of all motor tractors and trailers owned by it or leased by it on a permanent basis.

It conducted a part of its business, from time to time, by the use of tractors and trailers which it obtained from various owners under trip-lease agreements. Each such lease contained the following provisions:

"LESSOR (owner) HEREBY (a) Leases and delivers to the Lessee the following described motor vehicle(s) for the duration of a single outbound (return) trip to be used by Lessee in transporting property from:..........to........... over routes (specify)... ....... and warrants that he or it is the legal owner of the vehicle and equipment described as follows: (description of vehicle) (b) Agrees that during the term of this agreement, the Lessor shall fully maintain, service and keep the vehicle(s) described in good repair, provide all gas, oil, tires and other equipment necessary and pay driver'(s) salary. (c) Warrants (1) that driver(s) furnished with such motor vehicle(s) is (are) competent and qualified to operate said equipment, and meets all of the requirements of all applicable laws, rules and regulations; (2) that the said equipment is in a good state of repair, and (3) meets all the requirements of all applicable State and Federal laws, rules and regulations of the Interstate Commerce Commission and the Public Service Commission of the States in, into or through which it is operated. (d) Agrees that the Lessee shall not be liable for any loss or damage to or destruction of said leased vehicle(s) while it is being operated by or is in the care and control of driver(s) furnished by the Lessor. (e) Agrees to indemnify Lessee against (1) any loss resulting from the injury or death of such driver(s) and (2) any loss or damage resulting from the negligence, incompetence or dishonesty of such driver(s).

"LESSEE (Hennis) HEREBY (a) Agrees that during the term of this lease, the said vehicle(s) shall be solely and exclusively under the direction and control of the Lessee who shall assume full common carrier responsibility (1) for loss or damage to cargo transported in such motor vehicle, and (2) for the operation of such vehicle.

"IT IS MUTUALLY AGREED that this agreement shall cover the period of time from the commencement of loading the motor vehicle(s) to the termination of the unloading.

"The Compensation to be paid by Lessee to the Lessor for the lease

of the vehicle(s) described herein shall be the sum of $............ which amount shall constitute full and complete payment by Lessee for all equipment and materials supplied, maintenance and operating expenses, wages of driver(s), all taxes, insurance, including social security, workmen's compensation and withholding tax."

Hennis, as required by the Interstate Commerce Commission, classified and entered upon its records as "Purchased Transportation" all payments made by it to such lessors. The tax auditor, upon whose investigation and report this proceeding was instituted, ascertained that in certain instances the lessor to whom Hennis made payment as stipulated in the lease had eight or more employees and hence was subject to the Federal Unemployment Tax Act. In such instances, he made no claim that Hennis was obligated for contributions under the Employment Security Law based on any portion of the amount paid by. Hennis to the lessor-operator or on any amount paid by such lessor as compensation to his drivers. The claim for additional contributions relates solely to instances of "Purchased Transportation" where the particular lessor had less than eight employees and hence was not subject to the Federal Unemployment Tax Act.

The alleged basis of this claim for additional contributions is that such lessor-operator and the driver(s) furnished by such lessor were employees of Hennis within the meaning of the Employment Security Act. Hence, the contention is that Hennis must make contributions based on the amount of wages paid by the lessor to the driver(s) furnished by him or, in case of a lessor-operator, the amount to which he would have been entitled as wages for his services as driver.

Hennis contended, and now contends, that such lessors were independent contractors; and that neither the lessor nor persons employed by him to operate his equipment were employees of Hennis within the meaning of the Employment Security Law.

A transcript of evidence taken at hearings held May 12, 1954, and October 13, 1954, before a deputy commissioner, was filed with the Employment Security Commission, hereinafter called Commission. The Commission (Chairman) heard the matter on said record on December 10, 1956. Prior to decision, Hennis filed with the Commission its request for findings of fact and its request for conclusions of law. On April 19, 1957, the Commission (Chairman) filed its opinion No. 925. Upon its findings of fact and conclusions of law it adjudged that Hennis report and pay the said claim for additional contributions, together with interest thereon. The controversy relates solely to whether Hennis is liable for such additional contributions. If liable, there is no controversy as to *the amount* of the claim.

Hennis filed exceptions to the failure of the Commission to make

findings of fact and conclusions of law as tendered by it, and excepted to this portion of the Commission's finding of fact No. 3, as not supported by competent evidence, viz.:

"All such vehicles and drivers, while on trip-lease trips are dispatched and controlled by the dispatchers of the company. During the term of such trip-lease the vehicle is under the exclusive direction and control of the company which assumes full common-carrier responsibility for loss or damage to cargo being transported and also assumes full responsibility for the operation of such vehicle. The driver of such trip-lease vehicle, whether the owner-lessor or a driver furnished by such owner-lessor, is subject to the exclusive control of the company while operating such vehicle under such trip-lease agreement; that is, the company has the right under its agreement with the lessor to control such drivers in the performance of their duties, inasmuch as it has exclusive control of such vehicle."

On June 7, 1957, the Commission considered and overruled each and all of Hennis' exceptions and declared said opinion to be its final opinion. Thereupon, Hennis appealed to the superior court, bringing forward each and all of the exceptions theretofore filed to the Commission's said opinion.

The court held that the Commission erred in overruling Hennis' exception to the portion of the Commission's finding of fact No. 3 quoted above, and that the remaining facts found by the Commission did not justify the Commission's conclusions of law or its order. Thereupon, the court reversed the Commission's final order of June 7, 1957, adjudging "that the drivers of motor vehicles operating under trip-lease agreements, as described in the record, were not employees of Hennis Freight Lines, Inc., for the purpose of contributions under the North Carolina Security Law, and that Hennis Freight Lines, Inc., is not liable for the payment of contributions upon wages paid such drivers by the Lessors of motor vehicles operating under trip-lease agreements for the years in question."

The Commission excepted to said judgment and appealed.

*R. B. Overton, D. G. Ball and R. B. Billings for plaintiff, appellant.*
*York & Boyd and A. W. Flynn, Jr., for defendant, appellee.*

BOBBITT, J.  The question for decision is this: Are the drivers of vehicles so leased (whether the owner or a third party employed by him), during the term of the lease, employees of Hennis, or are they independent contractors or employees of independent contractors, under the Employment Security Law?

Ch. 424, S.L. 1949, made these material changes in Sec. 96-8 of the General Statutes of 1943:

First: G.S. 96-8(g)(6), prescribing certain statutory criteria for determining whether an individual was an employee of an employing unit, the so-called ABC test, was stricken in its entirety. The statutory criteria so stricken was the basis of the following decisions: *Employment Security Com. v. Monsees,* 234 N.C. 69, 65 S.E. 2d 887; *Employment Security Com. v. Distributing Co.,* 230 N.C. 464, 53 S.E. 2d 674; *Unemployment Compensation Com. v. Insurance Co.,* 219 N.C. 576, 14 S.E. 2d 689; *Unemployment Compensation Com. v. Insurance Co.,* 215 N.C. 479, 2 S.E. 2d 584.

Second: G.S. 96-8(g)(1) was rewritten. As rewritten, it was codified as G.S. 96-8(g)(1) of the General Statutes of 1950, which provides: " 'Employment' means service performed . . . including service in interstate commerce . . . for wage or under any contract of hire, written or oral, express or implied, in which the relationship of the individual performing such service and the employing unit for which such service is rendered is, as to such service, the legal relationship of employer and employee. Provided, however, the term 'employee' includes an officer of a corporation, but such term does not include (1) any individual who, under the usual common-law rules applicable in determining the employer-employee relationship, has the status of an independent contractor or (2) any individual (except an officer of a corporation) who is not an employee under such common-law rules."

Thus, whether the individuals here concerned are employees of Hennis or are independent contractors or employees of independent contractors must be determined according to the rules of the common law.

In *Pearson v. Flooring Co.,* 247 N.C. 434, 101 S.E. 2d 301, and cases cited, this Court has discussed the distinction between an employee and an independent contractor and the various elements which ordinarily tend to identify either the employee relationship or the independent contractor relationship.

Appellant relies largely upon the Commission's findings of fact. It asserts: first, that the portion of finding of fact No. 3, quoted above, is supported by competent evidence; second, the Commission's findings of fact, to which Hennis did not except, independent of said portion of No. 3, support the legal conclusion that the drivers were employees of Hennis.

Unquestionably, if the Commission's findings of fact are supported by competent evidence, such findings of fact are conclusive and the court is bound thereby. G.S. 96-4(m); *Employment Security Com. v. Simpson,* 238 N.C. 296, 77 S.E. 2d 718, and cases cited.

Apart from said portion of No. 3, the Commission's findings of fact set forth the respective obligations of the parties under the lease agreement. Nothing in the findings of fact or in the evidence suffices to show that the relationship was in fact different from that established by the terms of the lease agreement. If said portion of finding of fact No. 3 is interpreted to show a different relationship, to that extent it is not supported by competent evidence. Since the lease agreement determines the relationship, a question of law is presented. *Wood v. Miller,* 226 N.C. 567, 39 S.E. 2d 608.

The hybrid nature of these trip-lease agreements has caused much litigation. In reality, contrary to the Biblical admonition, a driver, employed and furnished by the lessor, must serve two masters. In *Hill v. Freight Carriers Corp.,* 235 N.C. 705, 71 S.E. 2d 133, Barnhill, J. (later C. J.), reviewed in detail the provisions of a lease agreement quite similar to that here involved. The conclusion was that, as between the lessor and the lessee, in respect of mutual contractual rights and liabilities, one to the other, the lessor had the status of independent contractor. (See *Newsome v. Surratt,* 237 N.C. 297, 74 S.E. 2d 732) But, as between the franchise carrier and its consignor, consignee, and third parties generally, the person who actually operated the vehicle (whether the owner or a third party employed by him) was the servant or employee of the franchise carrier.

An interstate carrier, which exercises its franchise rights by transporting its freight in leased equipment under leases such as that here involved, is liable in damages for injuries to third parties caused by the negligent operation of such equipment in the prosecution of such carrier's business. *Wood v. Miller, supra; Motor Lines v. Johnson,* 231 N.C. 367, 57 S.E. 2d 388; *Eckard v. Johnson,* 235 N.C. 538, 70 S.E. 2d 488; *Hill v. Freight Carriers Corp., supra; Newsome v. Surratt, supra.*

Moreover, with reference to the Workmen's Compensation Act, this Court has held: 1. The dependents of a lessor-operator, engaged in transporting freight for the lessee, an interstate carrier, under authority of the lessee's I.C.C. franchise and license plates, were entitled to recover death benefit compensation from the lessee. *Brown v. Truck Lines,* 227 N.C. 299, 42 S.E. 2d 71. 2. The dependents of the lessor's driver, under like circumstances, were entitled to death benefit compensation from the lessee. *Roth v. McCord,* 232 N.C. 678, 62 S.E. 2d 64. 3. The dependents of an assistant driver, aboard a tractor-trailer, then operated under like circumstances by the lessor, were entitled to death benefit compensation from the lessee. *McGill v. Freight,* 245 N.C. 469, 96 S.E. 2d 438. See also, *Peterson v. Trucking Co., ante,* 439, 103 S.E. 2d 479.

In the decisions cited in the two preceding paragraphs, it was held that the operator (whether the owner or his employee) while operating the leased equipment in furtherance of the business of the franchise carrier, was an employee of the franchise carrier in respect of hazards to which he and the public were subjected by reason of such operation. In such case, the interstate carrier is exercising its franchise rights by use of the services of the operator; and on this ground, and also on the ground of public policy, the interstate carrier has the liability of an employer for what occurs while the leased equipment is so operated. However, when we deal with a matter unrelated to what occurs during the operation of the leased equipment, the status of the operator is to be determined by whether the lessor is an independent contractor under the terms of the lease agreement. *Hill v. Freight Carriers Corp., supra.*

In the present case, no question arises as to the liability of the franchise carrier to a consignor, consignee, or third parties generally, on account of the operation of such leased equipment. Nor is there any question relating to the liability of the franchise carrier to the driver or his dependents under the Workmen's Compensation Act or otherwise in respect of injury or death caused by hazards to which the driver was subjected while exercising Hennis' franchise rights. The sole question here is whether, under the lease agreements, the compensation paid to such drivers, whether the lessor-operator or those employed by him, may be treated as wages paid by Hennis as an employer to its employees.

An "employer" (G.S. 96-8(f)) is required to make "contributions" in prescribed amounts (G.S. 96-9(b)) to the Unemployment Compensation Fund (G.S. 96-6) on "wages" (G.S. 96-8(n)) for "employment" (G.S. 96-8(g)) for each calendar year in which the employer is subject to the statute. (G.S. 96-9(a)). An "employer" as defined by G.S. 96-8(f), prior to the 1955 Act referred to below, was an "employing unit" (G.S. 96-8(e)) which, *inter alia,* "has, or had in employment," eight or more individuals.

Because of their interrelation, as stated by Barnhill, J. (later C. J.) in *Unemployment Compensation Com. v. Trust Co.,* 215 N.C. 491, 2 S.E. 2d 592: ". . . in interpreting our act serious consideration is to be given to the construction placed upon the Federal Statute by the administrative agency charged with its execution." *A fortiori,* serious consideration is to be given to the construction placed upon the federal statute by the Supreme Court of the United States.

Prior to the Act of Congress, "To extend and improve the employment compensation program," enacted September 1, 1954, 68 Stat. 1130, the provisions in respect of federal "Employment Taxes" applied only

to an employer of "eight or more." Internal Revenue Code of 1939, 53 Stat. 187, Sec. 1607(a). The 1939 provision, brought forward in the Internal Revenue Code of 1954, Sec. 3306(a), under the caption, "Federal Unemployment Tax Act," 68A Stat. 447, enacted August 16, 1954, was amended by said Act of September 1, 1954, by striking out "eight or more" and inserting in lieu thereof "4 or more." See USCA (1948), Title 26, Sec. 1607(a); also USCA (1955), Title 26, Sec. 3306 (a), and annotations. Hence, the lessors, here concerned either as drivers or as employers of drivers, were not subject to the Federal tax during the relevant period, to wit, 1950-1953. Nor were they subject to our Employment Security Law, which applied only to an employer "of eight or more." G.S. 96-8(f). To conform to the federal statute, G.S. 96-8(f) was amended by Sec. 3, Ch. 385, S.L. 1955, so as to apply to an employer of "four or more."

It is noted that a taxpayer, under the federal statute, was and is entitled to a credit, up to 90 per centum, of the amount of contributions paid by him into an unemployment fund maintained during the taxable year under an approved unemployment compensation law of a state. USCA (1948), Title 26, Sec. 1601; USCA (1955), Title 26, Sec. 3302.

Moreover, Sec. 96-8(f)(6) of the General Statutes of 1950, applicable to the relevant period, provided: "Any employing unit not an employer by reason of any other paragraph of this subsection, for which, within any calendar year, services in employment are or were performed with respect to which such employing unit is or was liable for any federal tax against which credit may or could have been taken for contributions required to be paid into a State Unemployment Compensation fund; . . ." An employing unit within this definition was an "employer" within the meaning of G.S. 96-8(f).

Under the rules of the common law, whether such lessor was an independent contractor did not depend upon whether he had eight employees or more. These statutory provisions provide the explanation for the tax auditor's decision to treat a lessor who had eight or more employees as an employer liable for contributions under the Employment Security Law.

In *Harrison v. Greyvan Lines, Inc.*, 331 U.S. 704, 67 S. Ct. 1463, 91 L. Ed. 1757 (1947), the United States Supreme Court considered whether such lessor-drivers and their drivers were employees of the interstate carrier (lessee) or independent contractors, within the meaning of the federal act. Under the particular lease agreements there involved, the interstate carrier had and exercised at least as great a control over such lessor-drivers and their drivers as Hennis had and exercised under the facts of the present case. It was held that such

lessors were independent contractors and that the interstate carrier was not liable for the payment of the federal tax on account of compensation they received while operating the leased equipment in the prosecution of the business of the interstate Carrier. The court, in opinion by Mr. Justice Reed, said: "But we agree . . . that where the arrangements leave the driver-owners so much responsibility for investment and management as here, they must be held to be independent contractors. These driver-owners are small businessmen. They own their own trucks. They hire their own helpers. . . . It is the total situation, including the risk undertaken, the control exercised, the opportunity for profit from sound management, that marks these driver-owners as independent contractors."

*Harrison v. Greyvan Lines, Inc., supra,* was decided June 16, 1947. Prior to June 14, 1948, Sec. 1607(i), of the Internal Revenue Code, provided: "The term 'employee' includes an officer of a corporation." On that date, Congress amended Sec. 1607(i) by inserting before the period the following: ", but such term does not include (1) any individual who, under the usual common-law rules applicable in determining the employer-employee relationship, has the status of an independent contractor or (2) any individual (except an officer of a corporation) who is not an employee under such common-law rules". 62 Stat. 438; USCA (1948), Title 26, Sec. 1607(i); USCA (1955), Title 26, Sec. 3306(i). As noted above, G.S. 96-8(g)(1) was amended by Ch. 424, S.L. 1949, to conform to said federal statute.

Appellant cites G.S. 96-8(e), which defines "employing unit." As rewritten by Ch. 322, S.L. 1951, G.S. 96-8(e) contains this sentence: "Each individual employed to perform or to assist in performing the work of any agent or employee of an employing unit shall be deemed to be employed by such employing unit for all the purposes of this chapter *unless such agent or employee is an employer subject to the tax imposed by the Federal Unemployment Tax Act,* whether such individual was hired or paid directly by such employing unit or by such agent or employee, provided the employing unit had actual or constructive knowledge of such work." While the quoted sentence had appeared in Sec. 19(e), Ch. 1, P.L. 1936, Extra Session, and in Sec. 96-8(e), of the General Statutes of 1943, the italicized words were inserted by the 1951 Act.

In our opinion, the quoted sentence has no bearing upon the status of the employee(s) of a lessor unless it is first determined that the lessor himself is an agent or employee of the lessee rather than an independent contractor. In *Texas Co. v. Higgins,* 118 F. 2d 636, it was held that an independent contractor was not covered as an employee under the federal Social Security Act, 42 USCA, Sec. 301 et seq. Judge

Learned Hand said: "A persuasive reason for this conclusion, at least in the case at bar, is that Congress could scarcely have meant a man doing a business like Thomas's to enjoy the benefit of unemployment allowances; and if he was not an 'employee,' his four assistants were not; the servant of a servant may be the master's servant, but the servant of an 'independent contractor' is not."

The lease agreement discloses a business venture by the lessor. The obligations and risks he assumes do not arise from an employee status. At his own expense, he provides "all gas, oil, tires and other equipment." He furnishes the driver(s) and pays his salary. Ordinarily, he, not Hennis, must bear the loss if his equipment is damaged or destroyed. *Hill v. Freight Carriers Corp., supra.* He is obligated to indemnify Hennis against loss incurred on account of the driver's injury or death and loss resulting from the negligence, incompetence or dishonesty of the driver. These are substantial commitments. It must be assumed that they affected materially the amount stipulated as the consideration to be paid by the lessee to the lessor.

"It seems untenable, in the absence of legislation for that purpose, to claim that any part of compensation paid for transportation involving the use of a truck and the service of its operator can be segregated and designated as 'wages'." *Commercial Motor Freight v. Ebright,* 143 Ohio St. 127, 54 N.E. 2d 297. Rather, the stipulated lease consideration constitutes full payment, in a lump sum, for the use of the vehicle, the services of the driver(s), and all other commitments assumed by the lessor under the lease.

As stated by Barnhill, J. (later C. J.) in *Hill v. Freight Carriers Corp., supra:* "While 'exclusive supervision and control' of the vehicle was vested in the defendant for the purpose of meeting the requirements of the I.C.C., actual possession or custody thereof was retained by plaintiff. It was to be operated by one of his choosing and in the selection of whom defendant had no part. Immediate control and supervision as to speed, manner of operation, hours of work, and the like necessarily remained with plaintiff."

It is inescapable, in view of the lessor's obligations under the lease, that the driver, in many respects, was subject to the direction and control of the lessor. Aside from matters pertaining to the maintenance of equipment, the driver was subject to discharge by the lessor, not by Hennis; and the lessor, if he elected to do so, could replace him by another qualified driver of his own selection.

Moreover, the driver's employment agreement as to compensation, tenure, and in all respects, was with the lessor. He had no contractual relationship with Hennis relating to his employment or compensation. So far as appears, the extent of the lessor's obligation to the driver(s)

in respect of compensation was unknown to Hennis. In fact, nothing was paid by Hennis to any driver as wages or otherwise; nor was he obligated to pay any such driver.

We conclude: 1. No part of the indivisible lease consideration paid by Hennis to a lessor who operated his own equipment under such lease may be considered as wages paid by an employer to his employee. As to their contractual rights and liabilities, *inter se,* the lessor was an independent contractor. 2. No part of the amount paid by the lessor, an independent contractor, to employees of his own selection, for a period that included the term of the lease, may be considered wages paid by Hennis as an employer to its employees. The conclusion stated. results in affirmance of the judgment of the court below.

Affirmed.