S & N FREIGHT LINE, INC. AND GREAT AMERICAN INSURANCE COMPANY v. BUNDY TRUCK LINES, INC.

No. 6810SC286

(Filed 13 November 1968)

1. **Carriers §§ 3, 10— interstate trip — lease agreement — action by lessee against lessor for damage to cargo**

    In an action by the lessee of a vehicle under an interstate trip-lease agreement against the lessor to recover for damages to the cargo allegedly caused by negligence of the lessor's driver, the court properly overruled defendant's demurrer to the complaint where the complaint (1) alleged that the driver of the vehicle was acting as the agent, servant, and employee of defendant-lessor and (2) set forth provisions of the trip-lease agreement by which the lessor agreed to fully maintain and service the equipment, furnish and pay the driver, and indemnify the lessee against loss resulting from the driver's negligence, notwithstanding the complaint also set forth a provision of the trip-lease agreement vesting exclusive control and possession of the vehicle in the lessee, such provision being included in the agreement for the purpose of meeting the requirements of the Interstate Commerce Commission and not being determinative of the liabilities and rights of the lessor and lessee *inter se.*

2. **Parties § 4; Insurance § 145— partial payment of loss by insurer — action against tort-feasor — proper parties**

    Where an insurance company pays only part of the loss of an insured, the insured must bring an action to recover for the loss in his own name, but the insurer is a proper party to such an action since it is subrogated in part and has an interest in the subject matter of the suit.

**3. Insurance §§ 78, 112, 145; Parties § 4—· motor cargo insurance — subrogation — indemnity provision in trip-lease agreement**

Where an insurer pays the insured lessee of a truck under an interstate trip-lease agreement for damages occurring to the cargo during the trip, the lessee having paid the consignor for the damages, the insurer becomes subrogated to the rights of the lessee against the lessor under an indemnity provision of the trip-lease agreement; where the insurer has not paid the full amount of the loss, the action for indemnity must be brought in the name of the insured, and the insurer is a proper party.

APPEAL by plaintiffs from *Bailey, J.,* 2 May 1968 Non-Jury Civil Session, WAKE Superior Court.

Plaintiffs' complaint states separately two causes of action. For a first cause of action, plaintiffs allege, in substance: S & N Freight Line, Inc. (S & N) contracted with Federal Electric Corporation (Federal Electric) to transport several cartons of sensitive electrical and electronic equipment. On 15 January 1965, S & N entered into a lease agreement with Bundy Truck Lines, Inc. (Bundy) under which Bundy leased its truck to S & N for the purpose of transporting the equipment of Federal Electric. The trip lease agreement was in writing, signed by the parties, and a copy attached to the complaint as Exhibit No. 1. Vernon Harrell was the agent, servant and employee of Bundy; was the driver of the leased unit; and signed the trip lease agreement for Bundy, having been authorized so to do. In the course of transporting the equipment, while operating the tractor-trailer unit in New Jersey, Vernon Harrell carelessly and negligently allowed the crates containing the equipment to collide with an underpass, or some other object, and some of the equipment was extensively damaged. When the equipment arrived at S & N's terminal at Norfolk, Virginia, it was inspected, found to be damaged, and returned to Federal Electric for repair and rebuilding so it could be delivered to the Air Force, the consignee. The equipment was damaged in the sum of $18,309.16, demand was made on S & N by Federal Electric, and S & N paid the damage. Great American Insurance Company (Great American) had issued to S & N a motor truck cargo insurance policy and, upon thorough investigation and receipt of proper proof of loss, paid to S & N $18,209.16 in partial reimbursement to S & N of its payment to Federal Electric. In consideration of said payment S & N executed a subrogation receipt under the terms of which Great American, to the extent of its payment to S & N, became subrogated to the rights of S & N against Bundy. A copy of the subrogation receipt is attached to the complaint as Exhibit No. 2. As a result of the negligent acts of Vernon Harrell, which are imputed to Bundy, plaintiffs

have been damaged in the amount of $18,309.16 and are entitled to recover said amount from Bundy.

For a second cause of action, plaintiffs allege matters substantially similar to those contained in the first cause of action. Additionally, they set out verbatim paragraph 17 of the trip lease agreement and allege that under the terms thereof Bundy agreed to save S & N harmless from the loss and damage alleged and that by virtue of the payment by Great American to S & N of a portion of the damage, Great American became subrogated to that extent to the rights of S & N against Bundy.

Bundy filed a motion to make the complaint more definite and certain, which was denied. Bundy then filed demurrer to the complaint. The court entered an order overruling the demurrer to the first cause of action and allowing the demurrer to the second cause of action. From that portion of the order allowing the demurrer to the second cause of action and dismissing it, plaintiffs appealed. Defendant Bundy applied for writ of certiorari from the overruling of the demurrer to the first cause of action, and the writ was granted by this Court.

*Teague, Johnson, Patterson, Dilthey & Clay by Grady S. Patterson, Jr., and Bob W. Bowers for plaintiffs S & N Freight Line, Inc., the Great American Insurance Company.*

*Boyce, Lake & Burns by Eugene Boyce and Philip P. Godwin and Gerald F. White for defendant Bundy Truck Lines, Inc.*

MORRIS, J.

### FIRST CAUSE OF ACTION — DEFENDANT'S APPEAL

[1]    Defendant argues that the demurrer should have been sustained because by the terms of the lease agreement, specifically paragraphs 5 and 14, the truck was in the exclusive possession, control, use, and management of lessee, S & N, at the time the damage was sustained and, therefore, Bundy cannot be liable under the doctrine of imputed negligence. Defendant concedes that, for the purpose of the demurrer, he has admitted the allegations in the complaint to the effect that the driver was his agent, servant and employee, but he contends that these allegations are inconsistent with the provisions of the lease agreement. Defendant therefore asserts that since the allegations are repugnant, they destroy and neutralize each other and when these are eliminated, no allegations of fact are left sufficient to state a cause of action. This principle

might ordinarily be applied. *Johnson v. Johnson,* 259 N.C. 430, 130 S.E. 2d 876. We think it would be applicable here if the provisions of the trip lease agreement relied on by defendant were determinative of the relationship between the parties. However, an analysis of cases involving trip lease agreements leads us to a contrary conclusion.

That these trip lease agreements present anomalous situations is pointed out by Bobbitt, J., in *Employment Security Commission v. Freight Lines,* 248 N.C. 496, 501, 103 S.E. 2d 829, when he said: "The hybrid nature of these trip lease agreements has caused much litigation. In reality, contrary to the Biblical admonition, a driver, employed and furnished by the lessor, must serve two masters."

Paragraph 5 of the trip lease agreement vests exclusive supervision and control of the vehicle in lessee for the purpose of meeting the requirements of the Interstate Commerce Commission. *Employment Security Commission v. Freight Lines, supra; Newsome v. Surratt,* 237 N.C. 297, 74 S.E. 2d 732; *Hill v. Freight Carriers Corp.,* 235 N.C. 705, 71 S.E. 2d 133. In the *Newsome* case, the Court said: "Likewise, it seems to be unanimously held by the courts that where a public authority grants an individual or corporation the right to engage in certain activities involving danger to the public, which right is denied to the general public, the duty to protect the public while performing such franchise activities is legally nondelegable and the franchise holder is therefore responsible for the conduct of those who are permitted to act under such franchise, even though such persons be independent contractors." That this policy is reflected in the Interstate Commerce Regulations is indicated by § 304(e), Title 49 U.S.C., which gives the Interstate Commerce Commission authority to prescribe regulations "as may be reasonably necessary in order to assure that while motor vehicles are being so used the motor carrier (lessee) is fully responsible for the operation thereof in accordance with applicable law and regulation, as if they were the owners of such vehicles . . ."

The action before us does not raise the question of the liability of the franchise carrier to a consignor, consignee, or third parties generally. *Wood v. Miller,* 226 N.C. 567, 39 S.E. 2d 608. This action raises the question of the liabilities and rights of the lessor and lessee *inter se.* The provision vesting exclusive control and possession of the vehicle in lessee, therefore, is not applicable here. The trip lease agreement discloses a business venture by the lessor. At his own expense, he furnishes "all necessary oil, gasoline, tires and repairs for the operation of said equipment" and is obligated "to pay all

other expenses incident to such operation." He furnishes "the driver, and shall pay the driver for his services, and shall withhold any withholding or social security tax required by the U. S. Government." He is responsible for all taxes, licenses and fines assessed against the equipment while it was being used by lessee. He is obligated to indemnify lessee against loss incurred on account of the driver's injury or death and loss resulting from the negligence, incompetence or dishonesty of the driver.

While exclusive control, management, and use of the vehicle was vested in the plaintiff for the purpose of meeting the requirements of the Interstate Commerce Commission, actual possession or custody thereof was retained by defendant Bundy. It was to be operated by one of his choosing and in the selection of whom plaintiff S & N had no part. Immediate supervision and control as to speed, manner of operation, hours of work, and the like necessarily remained with defendant Bundy. *Hill v. Freight Carriers Corp., supra; Employment Security Commission v. Freight Lines, supra.* These, we think, are the provisions of the agreement applicable and controlling here.

Defendant has admitted the allegations of agency in the complaint and the determinative provisions of the lease agreement. The demurrer was properly overruled.

### SECOND CAUSE OF ACTION — PLAINTIFFS' APPEAL

The second cause of action is based on paragraph 17 of the trip lease agreement which provides:

> "The lessor shall save the lessee harmless from any loss, damage or happening caused by negligence, incompetence or dishonesty of the driver, or lessor, or faulty equipment giving rise to claims on the part of the shippers, and the lessee shall withhold payment of any and all sums then or thereafter due the lessor, to the extent of such expense and claims until the determination of such expense and valid claims, which amounts shall be deducted to the satisfaction thereof."

Defendant contends that this portion of the complaint is defective for three reasons: (a) there is a misjoinder of causes and parties plaintiff, the subject matter being an indemnification contract between plaintiff S & N and defendant Bundy, (b) that the superior court has no jurisdiction over the subject matter of said claim by S & N because the claim of S & N is in the sum of $100 only, (c) that there is a misjoinder of causes of action, plaintiffs' alleged second cause of action being two different causes of action not separately stated and set forth.

[2]   It is well established that where an insurance company pays only a part of the loss of the insured, the insured must bring an action to recover for the loss in his own name, since the insurer has become subrogated to only a part of the loss. *Insurance Co. v. Sheek,* 272 N.C. 484, 158 S.E. 2d 635. It is also clear that the insurer is a proper party to such an action, since it is subrogated in part and has an interest in the subject matter of the suit. *New v. Service Co.,* 270 N.C. 137, 153 S.E. 2d 870. To reach a decision as to whether there is a misjoinder, we must first determine whether Great American became subrogated to the rights of S & N against Bundy based on the indemnity provisions of the lease agreement.

We do not find that the question of whether the insurer may be subrogated to the insured's contractual rights against a third party has ever been squarely presented to the North Carolina Supreme Court. In *Insurance Co. v. Faulkner,* 259 N.C. 317, 130 S.E. 2d 645, the Court, in an opinion by Parker, J. (now C.J.), held that the insurance company could become subrogated to the insured's rights against a third party when the liability of the third party arose by reason of a statute. Under G.S. 1-538.1 a parent is made responsible for damages in an amount not exceeding $500 resulting from the wilful or malicious acts of a child under 18 living with the parent. The plaintiff insurer had paid some $2000 under its policy of insurance and brought the action against the parent to recover the statutory maximum of $500. The Court quoted, with approval, the following from 46 C.J.S., Insurance, pp. 154-5:

> "The doctrine of subrogation is based on principles of natural justice and is created to afford relief to those required, as insurers, to pay a legal obligation which ought to have been met, either wholly or partially, by another. * * * Insurer's right to subrogation is not limited to cases where the liability of the third person is founded in tort, but any right of insured to indemnity will pass to insurer on payment of the loss, *including rights under contracts with third persons,* and rights under a statute making a city liable for injury to property by a mob or riot therein." (Emphasis added.)

See to same effect, Appleman, Insurance Law and Practice, Vol. 6, p. 521; Joyce, The Law of Insurance 2d, Vol. 5, p. 5913.

The precise question has been decided by courts of other jurisdictions. The Supreme Court of Washington in 1951 in *Consolidated Freightway v. Moore,* 38 Wash. 2d 427, 229 P. 2d 882, had before it a case involving a trip lease agreement containing a provision that lessor was to indemnify lessee in case of injury or damage. A third

party was injured in a collision with the leased equipment. Lessee's insurer paid the judgment obtained by the injured party against both lessee and lessor. Lessee gave insurer a loan receipt and brought action against lessor to collect under the indemnity provision. Plaintiff was given judgment as prayed. On appeal defendant lessor contended that the insurer was the real party in interest, was not privy to the contract of indemnity, had no right of subrogation by reason of its primary liability and that it should, therefore, not be permitted to make itself whole at the expense of the defendant. In affirming the trial court, the Supreme Court said:

> "We can agree that the insurance company is not privy to the contract and that the insurance company paid the loss. But, the ultimate question here presented is whether or not the insurance company is subrogated to respondent's contractual right of indemnity.
>
> *          *          *
>
> It (subrogation) is a device adopted by equity to compel the ultimate discharge of an obligation by him who in good conscience ought to pay it. . . .
>
> That insurance company recoveries, under their right of subrogation, most often flow from tort actions is quite natural, but without significance. Subrogation is an equitable principle and applies to contract rights as fully as it does to tort actions.
>
> By his contract the appellant (defendant-lessor) bound himself to pay the loss. Respondent has a contractual right to recover it from him. This cause of action is not defeated by the insurance company's payment of the judgment. The insurer is subrogated to appellant's contract right of indemnity. This sustains the cause of action against appellant for the identical reason that subrogation sustains a tort action where the plaintiff has been paid for his loss."

In *F. H. Vahlsing, Inc. v. Hartford Fire Ins. Co.*, 108 S.W. 2d 947 (Tex.), a railroad company had leased certain buildings to Vahlsing, the lease providing that Vahlsing would be responsible for cars placed on the spur contiguous to its leased premises in the event of the damage or destruction of such cars by fire. There was a fire, and insured paid part of the loss, took an assignment from the insured of whatever cause of action insured had against Vahlsing, and brought an action against Vahlsing to recover, claiming it was subrogated to the railroad's rights against Vahlsing under the terms of the lease agreement. Vahlsing contended that its lease agreement was a contract of indemnity, that the contract of insurance was a con-

tract of indemnity and, therefore, the insurer could not be subrogated to the rights of the railroad. The Court allowed the action stating ". . . if the railroad company would be entitled to recover for the loss as against the appellant, the insurance company in this action stands in its shoes and would also be entitled to recover."

In *Chicago, St. L. & N. R. Co. v. Pullman Southern Car Co.*, 139 U.S. 79, 35 L. Ed. 97, Pullman Company had entered into a contract with the Railroad under which Pullman Company was to furnish pullman cars to the Railroad and which provided that Railroad would repair all damages caused by accident or casualty during the term of the contract. Damage by fire occurred. Insurer paid Pullman Company and was assigned the right to bring this action in the name of Pullman, any recovery to be divided. The Court allowed the insurer to be subrogated to the insured's contractual rights against the Railroad.

> "By the provisions of the policies, the insurance companies were entitled, in case of loss, to an assignment of the plaintiff's right to receive satisfaction therefor from any other person or persons, town or corporation, with a power of attorney to sue for and recover the same at the expense of the insurer. Upon payment of the loss, or to the extent of any payment by them on account of such loss, the insurance companies were subrogated to the rights of the insured, and could, in the name of the insured, or in their joint names, maintain an action against the Railroad Company for indemnity, if that Company was liable to the insured for the loss of the cars."

The Wisconsin Court, in *Hartford Accident & Indemnity Co., v. Worden-Allen Co.*, 238 Wis. 124, 297 N.W. 436, allowed an action by the insurer of the owner of premises against a subcontractor. The subcontractor had agreed to save harmless the general contractor and the owner of the premises from damages connected with subcontractor's operations. An employee of subcontractor was injured on the job. The owner of the premises was held liable under the safe-place statute. His insurer paid the employee and brought this action claiming to be subrogated to the rights of the insured under the indemnity contract executed by subcontractor. The Court emphasized the fact that the employee was under the control of the subcontractor, defendant, at the time of the injury; that the owner's liability arose by reason of the fact that this was a nondelegable duty; and that the active negligence producing the injury was that of the subcontractor, even though it escaped liability because of Workmen's Compensation laws. The Court stated:

"It appears to us that the liability of Seaman here is precisely the sort that was contemplated under the indemnity contract, and that to hold that it is not is to render the indemnity meaningless."

A thorough and scholarly discussion of the principles of subrogation is found in *Standard Accident Ins. Co. v. Pellecchia*, 15 N.J. 162, 104 A. 2d 288. Here the Court cited with approval the *Vahlsing* case, *supra*, and the *Pullman* case, *supra*. The Wisconsin Court noted that, in subrogation suits, based not on the torts of a third party but on his contractual obligation to the insured, there was some reluctance in the early decisions to permit any recovery but "it is now well settled generally that such an action in subrogation on the contractual obligation of the defendant to an insured exists in favor of the insurer."

The Oklahoma Court in *Commercial Union Fire Insurance Co. v. Kelly*, 389 P. 2d 641, allowed an action based on contract brought by the insurance company as subrogee. There lessee of a building had agreed to make repairs to the building except for the usual wear and tear. The building was destroyed by fire. Plaintiff insurer paid the loss and sued lessee claiming to be subrogated to lessor's contractual rights against lessee. The trial court sustained defendant's demurrer, and plaintiff appealed. The Oklahoma Supreme Court, in reversing the trial court, said:

"We can only conclude that an action in subrogation exists in favor of an insurance company against a third party, based on the contractual obligation of the third party to the insurance company's insured, where the insurance company has paid the claim of its insured for loss under the terms of a fire insurance policy; but the insurance company's rights are derived from the rights which the insured has and is limited to those rights, and there can be no subrogation where insured had no claim against the third party."

An opposite result was reached in *Alexandra Restaurant v. New Hampshire Ins. Co.*, 272 App. Div. 346, 71 N.Y.S. 2d 515, 79 N.E. 2d 268, affirmed without opinion 297 N.Y. 858. There the Court said that the contract between lessee and lessor was a matter in which the insurance company had no concern and that "it is difficult to see why under the subrogation clause in question, the ultimate loss should fall upon the landlord while the insurance company though accepting and retaining its premium for the precise coverage of loss that occurred, should have no obligation or liability whatever."

The argument that the insurer may be allowed to receive a

"windfall" by reason of the fact that a recovery would result in its suffering no loss although it has been paid premiums by the insured to reimburse it against just such a loss is rendered less effective by reason of the fact that the insurer has incurred expenses connected with the writing of the insurance, the investigation and determination of the insured's claim and the expenses of settling or litigating the claim. Of course, Bundy had equal opportunity to acquire insurance coverage to protect itself in the event of loss. Paraphrasing the language of Parker, C.J., in *Insurance Co. v. Faulkner, supra,* it is not apparent why the prudent foresight of S & N in insuring cargoes transported by it should result in a detriment to the insurance company who paid the loss while the party assuming the liability therefor escapes the very liability which it agreed to assume. "The granting of subrogation will reach an equitable result: to deny it would accomplish injustice."

[3] Applying the principles enunciated in the cases discussed herein, we conclude that Great American is subrogated to S & N's rights against Bundy based on the indemnity provision in the lease agreement. This result obviates the contention that there is a misjoinder of parties. Since the insurance company has not paid the full amount of the loss, the action must be brought in the name of the insured. *Insurance Co. v. Sheek, supra,* and the insurance company is a proper party. *New v. Service Co., supra.*

The contention that there is a misjoinder of causes of action is without merit. Paragraph 17 of the lease agreement provides, "The lessor shall save the lessee harmless from any loss, damage or happening caused by negligence, incompetence or dishonesty of the driver . . ." The rights of Great American are limited to the rights of S & N; and, therefore, the driver's negligence, incompetence, or dishonesty must be alleged and proved.

As to defendant's appeal — affirmed.

As to plaintiffs' appeal — reversed.

MALLARD, C.J., and CAMPBELL, J., concur.