IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA16-759

Filed: 30 December 2016

Mecklenburg County, No. 15-CVS-17267

DAVID WICHNOSKI, O.D., P.A. d/b/a SPECTRUM EYE CARE and WICHNOSKI RE, LLC, Plaintiffs,

v.

PIEDMONT FIRE PROTECTION SYSTEMS, LLC, and SHIPP'S FIRE EXTINGUISHER SALES AND SERVICES, INC., Defendants,


and

SHIPP'S FIRE EXTINGUISHER SALES AND SERVICES, INC., Third-Party Plaintiff,


v.

ANDUJAR CONSTRUCTION, INC., COLONY INVESTORS, LLC, CUSTOM SECURITY, INC., and ELECTRICAL CONTRACTING SERVICE, INC., Third-Party Defendants.


Appeal by Proposed Intervenor from order entered 9 June 2016 by Judge Forrest D. Bridges in Superior Court, Mecklenburg County. Heard in the Court of Appeals 28 November 2016.

*Smith Moore Leatherwood, LLP, by John W. Reis, for Proposed Intervenor-Appellant, Main Street America Assurance Company.*

*Goldstein Law PLLC, by Jay M. Goldstein; and Saltz Matkov P.C., by Albert S. Nalibotsky, for Plaintiffs-Appellees.*

McGEE, Chief Judge.

## I. Background

David Wichnoski, O.D., P.A., d/b/a Spectrum Eye Care ("Spectrum") (together with Wichnoski RE, LLC, "Plaintiffs"), is a professional corporation engaged in the practice of optometry in Unit 105 ("the unit" or "Plaintiffs' unit") of a commercial condominium building ("the condominium") located at 7615 Colony Road, in Charlotte. Wichnoski RE LLC owns the unit in which Spectrum conducts its optometry practice. Defendant Piedmont Fire Protection Systems, LLC, ("Piedmont") installed the fire sprinkler system in the condominium. Defendant Shipp's Fire Extinguisher Sales and Services, Inc., ("Shipp's") conducted professional inspection(s) on the condominium's fire sprinkler system.

On or prior to 8 January 2014, freezing water pooled in a dry-pipe section of the condominium's fire sprinkler system and caused a pipe fitting to crack. As a result of the fractured pipe fitting, water flooded several units in the building, including Plaintiffs' unit, and caused property damage.

At the time of the water loss incident ("the incident"), Plaintiffs maintained an insurance policy ("the policy") with Main Street America Assurance Company ("Main Street"). The policy contained different policy limits for individual categories of coverage. After the incident, Plaintiffs made a claim under the policy for structural damages, damages to contents, loss of income, and damages to computer equipment and data. In total, Main Street paid Plaintiffs approximately $980,440.48 under the policy.

Plaintiffs filed a lawsuit against Piedmont and Shipp's (collectively, "Defendants") on or about 11 September 2015, alleging Defendants' negligence was the direct and proximate cause of Plaintiffs' damages from the water loss incident. Plaintiffs' complaint did not mention Main Street or its payments to Plaintiffs under the policy.[1]  Main Street filed a motion to intervene in the lawsuit on 29 April 2016 and attached a complaint for damages, naming all then-existing defendants.  In its motion to intervene, Main Street contended that "by asserting direct claims against the third parties[,] this proposed Intervenor's Complaint would allow [Main Street] to pursue its subrogation rights against all defendants and third-party defendants in this case[.]"  Main Street alleged it was entitled to both mandatory and permissive intervention under North Carolina Rule of Civil Procedure 24 ("Rule 24").  *See* N.C. Gen. Stat. § 1A-1, Rule 24 (2015).

Plaintiffs filed a motion opposing Main Street's motion to intervene on 17 May 2016.  Plaintiffs alleged that

> [s]ince Main Street only partially reimbursed its policyholders for their losses, Main Street is not entitled to assert a claim in its own name.  Main Street is neither a real party in interest in this action nor a "necessary party" under North Carolina law.  . . . The Court should [also] exercise its discretion [by] denying Main Street's motion, as its presence in the lawsuit will prejudice [Plaintiffs'] interests.

---

[1] Plaintiffs named Piedmont and Shipp's as the only defendants.  Four additional third-party defendants were subsequently added to the action by Shipp's Amended Answer:  Andujar Construction, Inc.; Colony Investors, LLC; Custom Security, Inc.; and Electrical Contracting Services, Inc.

Plaintiffs provided only one example of "partial reimbursement" from Main Street. Plaintiffs noted that, although they claimed damages to business personal property of approximately $450,000.00, Main Street paid only $320,000.00 on that claim, which was the policy limit for that specific category of damages.

The motion to intervene was heard on 23 May 2016. Main Street first argued it had a right to intervene in the action under N.C.G.S. § 1A-1, Rule 24(a)(2), which entitles a party to intervene if

> the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Main Street argued its payment to Plaintiffs, totaling more than $980,000.00, created a "direct and appreciable interest" in the transaction at issue in the lawsuit. Plaintiffs acknowledged receiving total payments in the amount alleged by Main Street, but nevertheless maintained that they were only partially compensated for their claims because "at a minimum[,] there was an uninsured loss as to the personal property portion of [Plaintiffs'] lawsuit."

Main Street further argued that its participation in the lawsuit was necessary to protect its own interests because, "[a]bsent intervention, [a subrogated] insurer is to a large extent, at the mercy of its insured's efforts and success in recovering from

the responsible third-party." According to Main Street, Plaintiffs could not adequately represent Main Street's interest in recouping its payments, because Plaintiffs claimed an *uninsured* loss of only $130,000.00. Main Street contended this could serve as a "disincentive [for Plaintiffs] to use their resources to seek damages beyond what was necessary to make themselves whole." Main Street also argued it should be permitted to intervene as a matter of discretion under N.C. Gen. Stat. § 1A-1, Rule 24(b)(2), because its intervention in the action would not "unduly delay or prejudice the adjudication of the rights of the original parties."

Plaintiffs cited *Hardware Dealers Mutual Fire Ins. Co. v. Sheek*, 272 N.C. 484, 158 S.E.2d 635 (1968), in support of their argument that, under current North Carolina law, "[an] insurer has no . . . legal right to bring an action [against third-party tortfeasors] unless they have fully compensated their insured. . . . The insured has the sole right to bring the action and will hold in trust any monies recovered that are ultimately owed to the insurer." Despite Main Street's total payments to Plaintiffs, Plaintiffs noted that "certain [individual] components of [their] loss" were subject to policy coverage limits. In particular, Plaintiffs' policy covered damages to contents (*i.e.*, personal property) up to $320,000.00. Plaintiffs submitted a claim for personal property loss of $450,000.00. According to Plaintiffs, because Main Street paid the policy limit with respect to that particular line item, rather than the full amount of Plaintiffs' claim, Plaintiffs were only "partially reimbursed" for their total

loss. Plaintiffs argued that, notwithstanding N.C.G.S. § 1A-1, Rule 24, an insurer "do[es] not have a legal right to intervene in a case where the insured has not been made whole[.]" When the trial court asked why Plaintiffs opposed intervention by Main Street, counsel for Plaintiffs submitted that "having the insurance company as a plaintiff, can have . . . a negative bearing on the fact-finder. . . . Well, if . . . the jury knows that the insured has already been paid, it's less likely that they'll – they'll even find in the insured's favor."

The trial court agreed with Plaintiffs, finding that Main Street had not paid "the full extent" of Plaintiffs' damages and that

> under established law in North Carolina, . . . the plaintiff/property owner and insured still retains the exclusive right to file the lawsuit for the recovery of the damages and to the extent that the insurance carrier has an interest in that . . . recovery by way of subrogation. . . . [T]he plaintiff/property owner, insure[d,] acts as a trustee for that recovery for the benefit of the insurance carrier to the extent of the interest of that party in any recovery and . . . in carrying out that role as trustee, . . . there is adequate protection for the interest of the insurance carrier.

The court concluded that "this is a situation that [does not] allow[] for . . . intervention as a matter of right[.]" It further found that permitting discretionary intervention by Main Street would "result in undue delay."

Main Street's motion to intervene was denied by order filed 9 June 2016. The trial court deemed *Hardware Dealers* wholly dispositive on the issue of intervention of right, finding that

> where a subrogating insurance carrier has only partially reimbursed its insured, the insured has the sole right to sue the wrongdoer. Here Main Street reimbursed [P]laintiffs, it's [sic] insured, for only a portion of their losses. Therefore, Plaintiffs have the sole right to sue to recover for the damages [allegedly] caused by the defendants.

The court further found that

> [a]llowing [discretionary] intervention at this time [would] refocus the primary direction of the litigation . . . and cause delay by requiring the amendment of pleadings. . . . The addition of the subrogating insurer as a party plaintiff may also prejudice [Plaintiffs'] rights by unnecessarily injecting insurance into [Plaintiffs'] claims against the defendants.

Main Street appeals.

## II. Standard of Review

A trial court's decision regarding intervention of right is reviewable *de novo*. *Harvey Fertilizer & Gas Co. v. Pitt Cty.*, 153 N.C. App. 81, 86, 568 S.E.2d 923, 926 (2002); *see also Hill v. Hill*, 121 N.C. App. 510, 511, 466 S.E.2d 322, 323 (1996) ("Intervention of right is an absolute right and denial of that right is reversible error, regardless of the trial court's findings."). "Under a *de novo* review, [this] [C]ourt considers the matter anew and freely substitutes its own judgment for that of the trial court." *Anderson v. Seascape at Holden Plantation, LLC*, 232 N.C. App. 1, 8, 753

S.E.2d 691, 697 (2014) (citation and quotation marks omitted) (alterations in original). A trial court's decisions regarding permissive intervention are reviewed for abuse of discretion only. *Harvey Fertilizer*, 153 N.C. App. at 86, 568 S.E.2d at 926. "An abuse of discretion occurs when the trial court's ruling is so arbitrary that it could not have been the result of a reasoned decision." *Chicora Country Club, Inc. v. Town of Erwin*, 128 N.C. App. 101, 109, 493 S.E.2d 797, 802 (1997) (citation and internal quotation marks omitted).

### III. Intervention of Right

### 1. N.C. Gen. Stat. § 1A-1, Rule 24(a)(2)

N.C. Gen. Stat. § 1A-1, Rule 24(a)(2), provides that "anyone shall be permitted to intervene in an action:"

> When the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Pursuant to this provision, the party seeking to intervene must demonstrate "(1) an interest relating to the property or transaction, (2) practical impairment of the protection of that interest, and (3) inadequate representation of the interest by existing parties." *Bailey & Assocs., Inc. v. Wilmington Bd. of Adjust.*, 202 N.C. App. 177, 185, 689 S.E.2d 576, 583 (2010). Main Street alleges it has a right to intervene

in Plaintiffs' lawsuit under Rule 24(a)(2) because it meets all three of the above requirements.

## 2. *Hardware Dealers*

Plaintiffs rely exclusively on *Hardware Dealers* in support of their argument that, because Main Street only "partially reimbursed" Plaintiffs for their losses related to the 8 January 2014 incident, Main Street has no right to intervene in Plaintiffs' action(s) against third-party tortfeasors for damages arising from that incident. The trial court agreed with Plaintiffs, finding that under *Hardware Dealers*, "[i]t is well-established law in North Carolina . . . that where a subrogating insurance carrier has only partially reimbursed its insured, the insured has the sole right to sue the wrongdoer." This was the only basis for the trial court's conclusion of law that Main Street was not entitled to intervene under Rule 24(a)(2). Importantly, we note that *Hardware Dealers* did not involve interpretation or application of N.C.G.S. § 1A-1, Rule 24, which had not yet been enacted when that case was pending before the trial court.[2] As discussed below, we find Plaintiffs' reliance on *Hardware Dealers* misplaced.

---

[2] N.C.G.S. § 1A-1, Rule 24, was ratified by the North Carolina General Assembly on 27 June 1967. Although the Supreme Court's decision in *Hardware Dealers* was filed on 12 January 1968, the trial court had dismissed the plaintiff's action on or about 24 April 1967, approximately two months before N.C.G.S. § 1A-1, Rule 24, was ratified. The rule was not raised or discussed in our Supreme Court's opinion.

In *Hardware Dealers*, the plaintiff-insurer brought suit against an alleged tortfeasor to recover the amount the plaintiff had paid to its insured, a furniture and hardware store, for damages caused by a fire. 272 N.C. at 484, 158 S.E.2d at 636. The defendant subsequently filed an affidavit in which an officer of the insured stated that the business's total losses exceeded the full amount of its insurance coverage by approximately $2,000.00.[3] The defendant argued that "therefore, . . . any action against this defendant for the damages alleged in the complaint [could] be maintained only by the insured[.]" *Id.* at 485, 158 S.E.2d at 636. Our Supreme Court agreed with the defendant, holding that

> when an insurer of property pays the insured's loss, he is subrogated to the extent of the payment to [the] insured's claim against the wrongdoer who caused the damage. If the sum paid covers the entire loss, the insurer is subrogated to the entire cause of action and may sue the wrongdoer without making the insured a party. When the insurer pays only a part of the loss, the insured must bring the suit for the entire loss in his own name. He becomes a trustee for the insurer to the extent of the amount the insurer has paid. If the insured refuses to bring the suit, the insurer may sue in its own name, for the amount it has paid, and make the insured a party defendant.

---

[3] The plaintiff did not challenge the defendant's contention that the insured's loss exceeded the amount it had paid to the insured under the insurance policy. Indeed, in a written motion to amend its complaint by making the insured a party, "the plaintiff [affirmatively] allege[d] the insured's loss exceeded the amount of plaintiff's coverage. When the [trial c]ourt ascertained this fact in the pre-trial conference, the [c]ourt concluded the plaintiff could not maintain the action." 272 N.C. at 487, 158 S.E.2d at 638.

*Id.* at 486, 158 S.E.2d at 637. The Court concluded that the plaintiff-insurer was not the real party in interest, and that "[because] defendants have the right to demand that they be sued by the real party in interest and by none other[,]" this provided a complete defense to the plaintiff's suit.[4] *Id.* at 487, 158 S.E.2d at 638.

Main Street contends *Hardware Dealers* was implicitly overruled by *Colon v. Bailey*, 316 N.C. 190, 340 S.E.2d 478 (1986) (*per curiam*). In *Colon*, the plaintiffs owned a restaurant that was destroyed by fire. The plaintiffs had an insurance policy with Great American Insurance Company ("Insurance Company") insuring the building in the event of fire loss and a separate policy with a different insurer ("the other insurer") insuring the building's contents. Insurance Company paid the plaintiffs the entire amount of their policy, and the plaintiffs also received payments from the other insurer. The plaintiffs subsequently signed a mutual release agreement with the defendants, who were lessees of plaintiffs' restaurant, in which the plaintiffs and defendants agreed to divide the proceeds recovered from the other insurer and further "released and discharged each other 'from all claims, suits, causes

---

[4] The Court also held the plaintiff-insurer "had the legal right to demand that the insured assert its claim against the wrongdoer and to hold in trust for it so much of the recovery as was required to reimburse it for the amount paid. In the event the insured refused to prosecute its claim, the insurer could sue both the insured and the wrongdoer." 272 N.C. at 487, 158 S.E.2d at 638.

of action and charges' arising out of [the] defendants' lease of [the] plaintiffs' property." *Colon v. Bailey*, 76 N.C. App. 491, 492, 333 S.E.2d 505, 505-06 (1985).[5]

Several months after signing this agreement, the plaintiffs sued the defendants for breach of their lease agreement and negligent maintenance of equipment. Insurance Company sought to intervene, asserting "subrogation to the rights of [the] plaintiffs to the extent it had paid on [the] plaintiffs' policy." *Id.* at 492, 333 S.E.2d at 506. The defendants raised as a defense the mutual release agreement, which they contended barred all claims by the plaintiffs. The trial court denied Insurance Company's motion to intervene and entered summary judgment for the defendants. *Id.*

On appeal, the plaintiffs and Insurance Company argued that there was a genuine issue of fact as to whether the mutual release agreement released all claims or merely those claims related to the proceeds received from the other insurer. *Id.* at 493, 333 S.E.2d at 506. Insurance Company also contended it was entitled to intervention of right under N.C.G.S. § 1A-1, Rule 24(a)(2). *Id.* at 494, 333 S.E.2d at 507. This Court held that the trial court correctly interpreted the parties' mutual release agreement as a bar to the plaintiffs' suit against the defendants. We further concluded that, because summary judgment was proper, there was no pending

---

[5] This citation is to the Court of Appeals opinion, which contained the operative facts and procedural background of the case. Our Supreme Court reversed in a one-sentence, *per curiam* decision.

"action" in which Insurance Company could intervene.  Thus, N.C.G.S. § 1A-1, Rule

24(a)(2), which permits a party to intervene "in an action," did not apply.  *Id.*

The dissenting judge maintained that the trial court erred in denying

Insurance Company's motion to intervene:

> When [Insurance Company] moved to intervene the action
> was still pending, . . . and since [Insurance Company's]
> motion shows that it has a substantial interest in the
> transaction which is the subject of the suit, is so situated
> that the disposition of the action will impair its ability to
> protect that interest and its interest is not being
> adequately represented by [the] plaintiffs, it ha[d] the
> absolute right to intervene under the terms of Rule
> 24(a)(2).

*Id.* at 494-95, 333 S.E.2d at 507.  Our Supreme Court subsequently reversed the

decision of the Court of Appeals, "[f]or the reasons stated in the dissenting opinion[.]"

*Colon v. Bailey*, 316 N.C. 190, 340 S.E.2d 478 (1986) (*per curiam*).  We now consider

whether the enactment of N.C.G.S. § 1A-1, Rule 24(a)(2), and the Supreme Court's

*per curiam* reversal in *Colon*, modified or overruled *Hardware Dealers* with respect

to partial subrogation claims.

We find *Hardware Dealers* inapposite to a discussion of mandatory

intervention under N.C.G.S. § 1A-1, Rule 24(a)(2).  The question at issue in *Hardware*

*Dealers* – whether, at common law, an insurer could initiate an action against a

tortfeasor to recover amounts paid to its insured – is not presently before us.  Instead,

the question is whether Rule 24(a)(2) entitles Main Street to intervene in an action

already instituted by its insured. Nothing in the plain language of N.C.G.S. § 1A-1, Rule 24(a)(2), which was not yet in effect when *Hardware Dealers* was pending before the trial court, and which was not discussed, interpreted, or applied in the Supreme Court's decision in that case, suggests that the rule's applicability turns upon a proposed intervenor's status as partially or fully subrogated to the rights of the claimant. In the present case, because the trial court erroneously deemed *Hardware Dealers* dispositive on the issue of intervention of right, it failed to consider whether Main Street met the actual requirements of N.C.G.S. § 1A-1, Rule 24(a)(2). We do so now.

### 3. Interest Relating to the Property or Transaction Which is the Subject of the Action

N.C.G.S. § 1A-1, Rule 24(a)(2), first requires that a party seeking to intervene of right must "claim[] an interest relating to the property or transaction which is the subject of the action[.]" Our Supreme Court has held that

> where no other statute confers an unconditional right to intervene, the interest of a third party seeking to intervene as a matter of right under N.C.G.S. § 1A-1, Rule 24(a) must be of such direct and immediate character that he will either gain or lose by the direct operation and effect of the judgment. . . . One whose interest in the matter in litigation is not a direct or substantial interest, but is an *indirect*, inconsequential, *or* a *contingent* one cannot claim the right to defend.

*Virmani v. Presbyterian Health Services Corp.*, 350 N.C. 449, 459, 515 S.E.2d 675, 682-83 (1999) (citation and internal quotation marks omitted) (emphases in original).

Thus, the focus under N.C.G.S. § 1A-1, Rule 24(a)(2), is not whether a proposed intervenor's interest is "partial" or "total," as Plaintiffs assert, but whether it is "direct and immediate" as opposed to "indirect, inconsequential, or . . . contingent[.]" Our appellate courts have recognized, even under the common law rule articulated in *Hardware Dealers*, that a partially subrogated insurer has a "clear . . . interest in the subject matter of [a] suit" brought by its insured. *See S & N Freight Line, Inc. v. Bundy Truck Lines, Inc.*, 3 N.C. App. 1, 6, 164 S.E.2d 89, 92 (1968); *see also Burgess v. Trevathan*, 236 N.C. 157, 161, 72 S.E.2d 231, 234 (1952) ("Since an insurance company which pays the insured for *a part of the loss* is entitled to share to the extent of its payment in the proceeds of the judgment in the action brought by the insured against the tort-feasor [sic] to recover the total amount of the loss, *it has a direct and appreciable interest in the subject matter of the action*[.]" (emphases added)). In the present case, the trial court "agree[d] . . . that [Main Street's] claim is one in which the insurance carrier has an interest[.]"

In *J & B Slurry Seal Co. v. Mid-South Aviation, Inc.*, 88 N.C. App. 1, 362 S.E.2d 812 (1987), this Court characterized subrogation as "an equitable remedy in which one steps into the place of another and takes over *the right to claim monetary damages* to the extent that the other could have[.]" *Id.*, 88 N.C. App. at 11, 362 S.E.2d at 818 (emphasis added). Thus, regardless of whether an insurer is partially or fully subrogated, the fact of subrogation "vests an equitable right to reimbursement in the

insurer[.]" *Id.* at 12, 362 S.E.2d at 819. We conclude this "right to reimbursement" is an "interest" for purposes of N.C.G.S. § 1A-1, Rule 24(a)(2). This is consistent with *Colon*, in which the proposed intervenor was found to have a "substantial interest" in the suit, under Rule 24(a)(2), where it had paid "the full amount of [its insured's] *policy*[;]" *i.e.*, not necessarily the full amount of the insured's *loss*. *Colon*, 76 N.C. App. at 492, 333 S.E.2d at 505 (emphasis added).

This is also consistent with the rule followed in the federal courts, as announced by the United States Supreme Court in *U.S. v. Aetna Cas. & S. Co.*, 338 U.S. 366, 94 L. Ed. 171 (1949). In that case, the Court held:

> In cases of partial subrogation the question arises whether suit may be brought by the insurer alone, whether suit must be brought in the name of the insured for his own use and for the use of the insurance company, or whether all parties in interest must join in the action. Under the common-law practice rights acquired by subrogation could be enforced in an action at law only in the name of the insured to the insurer's use. [Our Court has] characterized this rule as "a vestige of the common law's reluctance to admit that a chose in action may be assigned, [which] is today but a formality which has been widely abolished by legislation." . . . *No reason appears why such a practice should now be required in cases of partial subrogation, since both insured and insurer "own" portions of the substantive right and should appear in the litigation in their own names.*

*Id.*, 338 U.S. at 381, 94 L. Ed. at 185 (internal citations and quotation marks omitted) (emphasis added); *see also Virginia Electric & Power Co. v. Carolina Peanut Co.*, 186 F.2d 816, 820 (4th Cir. 1951) (holding insurance company should have been allowed

to intervene in action by its insured to recover for damages sustained in a fire, because "it is elementary that in such a case an insurance company which has paid *a part of the loss* is entitled to a *pro rata* portion of any amount that may be recovered, and is entitled to join in the suit for the recovery of damages." (emphases added)); *Aikens v. Ludlum*, 113 N.C. App. 823, 824, 440 S.E.2d 319, 320 (1994) (holding that where "North Carolina decisions addressing [a rule of state civil procedure are] insufficient to answer [a] question, we are guided by federal law [if] the North Carolina version of [the rule] is virtually identical to its United States counterpart.").[6]

We conclude that the right to intervene under N.C.G.S. § 1A-1, Rule 24(a)(2), does not turn upon whether a proposed intervenor-insurer has been partially or fully subrogated to the claim(s) of its insured. Plaintiffs' interpretation would render Rule 24(a)(2), which refers only to "an interest," a nullity as applied to partially subrogated insurers. *See Quick v. Insurance Co.*, 287 N.C. 47, 55, 213 S.E.2d 563, 568 (1975) ("There is a doctrine that if legislation undertakes to provide for the regulation of human conduct in respect to a specific matter or thing already covered by the common law, and parts of which are omitted from the statute, such omissions must be taken generally as evidences [sic] of the legislative intent to repeal or abrogate the same." (citation and quotation marks omitted)); *Moore v. Nationwide Mut. Ins. Co.*, 191 N.C. App. 106, 109, 664 S.E.2d 326, 328 (2008) ("'When the legislature acts, it is always

---

[6] Rule 24(a)(2) of the Federal Rules of Civil Procedure is "virtually identical" to N.C.R. Civ. P. 24(a)(2). *See* Fed. R. Civ. P. 24(a)(2).

presumed that it acts with full knowledge of prior and existing law[.]'" (citation omitted)). Whether an insurer has paid part or all of an insured's loss, it has acquired "an interest" – *i.e.*, recoupment of payment(s) made to the insured – in a lawsuit by the insured to recover damages arising out of the same event or transaction that triggered the insurance payment(s).

In its motion to intervene, Main Street alleged its insurance payments to Plaintiffs "for damages to the structure, contents, loss of income, and computer equipment and data . . . totaled an amount in excess of \$900,000." Plaintiffs concede they received more than \$980,000.00 from Main Street. *See Councill v. Town of Boone Bd. of Adjust.*, 146 N.C. App. 103, 108, 551 S.E.2d 907, 910 (2001) (holding that "undisputed allegations [were] sufficient to establish that appellants [were] interested parties" under N.C.G.S. § 1A-1, Rule 24(a)(2)). Main Street thus satisfied the first requirement set forth in N.C.G.S. § 1A-1, Rule 24(a)(2), by demonstrating a direct and immediate interest in Plaintiffs' action against the third-party defendants. Because Main Street "claims an interest relating to the property or transaction which is the subject of [Plaintiffs'] action," the task of the trial court was to determine whether Main Street had shown a possibility of "practical impairment of the protection of that interest" and "inadequate representation of that interest by existing parties." *See Hunt v. Hunt*, ___ N.C. App. ___, ___, 784 S.E.2d 219, 223 (2016) (citation and quotation marks omitted).

4. Impair or Impede

Both the "impair or impede" and the "adequately represented" provisions of N.C.G.S. § 1A-1, Rule 24(a)(2), involve factual determinations to be made on a case-by-case basis. *See, e.g.*, *Charles Schwab & Co. v. McEntee*, 225 N.C. App. 666, 674, 739 S.E.2d 863, 868 (2013) (finding no right to intervene where proposed intervenor "ha[d] not *alleged facts* which would indicate that its interest was not adequately represented[.]" (emphasis added)); *Bailey and Assocs., Inc.*, 202 N.C. App. at 185-86, 689 S.E.2d at 583-84 (finding intervenors were entitled to intervene under Rule 24(a)(2), where facts showed numerous ways in which "they and their property would be injured" if a particular party prevailed in the lawsuit). In the present case, the trial court made no findings with respect to Rule 24(a)(2)'s "impair or impede" prong.

The Official Comment to Rule 24 explicitly emphasizes that, under subsection 24(a)(2), "the harm to the intervenor's interest is to be considered from a 'practical' standpoint, rather than technically." *See* Official Comment to N.C.G.S. § 1A-1, Rule 24. Importantly, N.C.G.S. § 1A-1, Rule 24(a)(2), does not require that disposition of an action may "destroy" or "eliminate" a proposed intervenor's ability to protect its interest, but only that it "*may* as a *practical matter* impair or impede [the movant's] ability to protect its interest." Thus, it is not necessary that denying intervention would foreclose any possibility of recovery by the insurer. For instance, "even under subrogation law, the 'claim-splitting' rule does not in every case necessarily bar a

*second* suit by a partially subrogated insurer on the same facts giving rise to a prior suit by its insured."[7]  *Slurry*, 88 N.C. App. at 15, 362 S.E.2d at 821 (emphasis in original).  Additionally, "[a] tort-feasor [sic] may not defeat an insurance carrier's subrogation rights when he has knowledge of the subrogated claim and thereafter secures a consent judgment or release from the injured or damaged party."  *State Farm Mutual Auto. Ins. Co. v. Blackwelder,* 103 N.C. App. 656, 658, 406 S.E.2d 301, 302 (1991) (citation omitted); *cf. Johnston County v. McCormick*, 65 N.C. App. 63, 67, 308 S.E.2d 872, 874 (1983) ("The general rule in insurance subrogation cases . . . is that payment by a tort-feasor [sic] of an injured party's claim *without notice of a subrogee's interest* is a complete defense to a subrogee's claim against the tort-feasor." (emphasis added)).  Because all third-party defendants[8] in the present case know of Main Street's subrogation rights as a result of Main Street's efforts to intervene in the action, a settlement between Plaintiffs and some or all of the defendants would not necessarily preclude Main Street from asserting its subrogation rights against the defendants.  However, requiring an insurer to enforce its subrogation rights

---

[7] "[T]he common law rule against claim-splitting is based on the principle that all damages incurred as the result of a <u>single wrong</u> must be recovered in one lawsuit." *Bockweg v. Anderson*, 333 N.C. 486, 492, 428 S.E.2d 157, 161 (1993) (citation omitted) (emphasis in original). "Under North Carolina law, a plaintiff is entitled to one compensation for all loss and damage . . . which were the certain and proximate results of the single wrong or breach of duty, and the demand cannot be split and several actions maintained for the separate items of damage." *Harris-Teeter Super Markets v. Watts*, 97 N.C. App. 101, 104, 387 S.E.2d 203, 205 (1990) (citation and internal quotation marks omitted).

[8] *See supra* n.1.

through separate lawsuits may nevertheless be an impractical method of protecting the insurer's interest. *See*, *e.g.*, *New v. Service Co.*, 270 N.C. 137, 139, 153 S.E.2d 870, 873 (1967) ("The purpose of making the insurer a party [to the insured's suit against an alleged tortfeasor] is to determine *and to protect*, in one action, the rights of all who may have an interest in the litigation." (emphasis in original)); *Parrish v. Grain Dealers Mutual Ins. Co.*, 90 N.C. App. 646, 649, 369 S.E.2d 644, 646 (1988) (Greene, J., concurring) ("In many instances, pursuit of a subrogation claim against an underinsured tortfeasor is futile because of the financial status of the tortfeasor.").

We find that Main Street's ability to protect its interest may be impaired or impeded by the disposition of Plaintiffs' action. In its motion to intervene, Main Street contended that "[w]ithout the addition of [Main Street] in the case, . . . Plaintiffs and their counsel [could] file a voluntary dismissal or settle out with one or more of the defendants at any time[.]" Absent intervention, an insurer's ability to recover directly from its policyholder is constrained by the insured's level of success in recovering from the third parties. If Plaintiffs' ultimate recovery is insufficient to fully satisfy Main Street's subrogation rights, Main Street will have to seek recovery from numerous third parties, with uncertain prospects of success. *See State ex rel. Crews v. Parker*, 319 N.C. 354, 360, 354 S.E.2d 501, 505 (1987) (finding proposed intervenor's interest in reimbursement would "[c]learly . . . be impaired by any judgment . . . which failed to take her claim for reimbursement into account,

regardless of whether she would be bound by that judgment. She would, as a practical matter, suffer the expense and inconvenience of bringing a separate suit against [the] defendant."); *see also Teague v. Bakker*, 931 F.2d 259, 261 (4th Cir. 1991) (finding intervenors' ability to protect their interest would be impaired or impeded by disposition of action because "[i]f [plaintiff] prevail[ed] . . . , [the intervenors] would have to satisfy their judgment from other assets of the insureds and the existence and amount of such assets [were] questionable."); *Alford v. Davis,* 131 N.C. App. 214, 218, 505 S.E.2d 917, 920 (1998) (citing *Teague* as providing "the current approach to interpreting [N.C.]G.S. § 1A-1, Rule 24[.]").

### 5. Adequate Representation

We also find Main Street has satisfied Rule 24(a)(2)'s third requirement by showing its interest is not adequately represented by Plaintiffs.

While the trial court did find that "there [was] adequate protection for the interest of the insurance carrier," it did so based on the common law rationale followed in *Hardware Dealers*, that "the plaintiff/property owner . . . acts as a trustee . . . for the benefit of the [partially subrogated] insurance carrier to the extent of the interest of that party in any recovery[.]" The mere fact that "the law imposes the duty upon [a] policyholder to act as the trustee for the insurer to the extent of the amounts paid by the insurer" does not necessarily ensure the policyholder will (or can) "adequately represent" a subrogated insurer's interest as contemplated by

N.C.G.S. § 1A-1, Rule 24(a)(2). In the present case, the trial court recognized the inherent disadvantage to Main Street, finding Plaintiffs would hold "*any funds they recover* from the defendants in trust for themselves and Main Street, the subrogating insurer." Plaintiffs allege an uninsured loss of $130,000.00. Main Street, by contrast, has a vested interest of nearly one million dollars. This discrepancy alone suggests Plaintiffs cannot adequately represent Main Street's interest. Our Supreme Court has held that an insured must account to its insurer only "[w]hen the insured obtains *full satisfaction* from the wrongdoer[.]" *Insurance Co. v. R.R.*, 165 N.C. 143, 147, 80 S.E. 1069, 1072 (1914) (emphasis added). Main Street can recover directly from Plaintiffs only to the extent that Plaintiffs' ultimate recovery exceeds the amount of Plaintiffs' uncompensated losses. *See Powell v. Water Co.*, 171 N.C. 345, 352, 88 S.E. 426, 430 (1916) (noting that, where insured brings suit against tortfeasor for entire damages, insured "holds recovery *first to make good his own loss*, and then in trust for the insurer[.]" (emphasis added)).

As Main Street observed at the hearing on its motion to intervene, Plaintiffs may have little incentive "to use their resources to seek damages beyond what [is] necessary to make themselves whole." This proposition does not require an assumption that Plaintiffs would act in bad faith in their efforts to recover on Main Street's behalf; it merely acknowledges that they may encounter practical limitations that Main Street's participation could alleviate. Main Street alleged it has "all the

resources to pay for a fire protection engineering expert and to assist in . . . bearing [Plaintiffs'] costs." Finally, Plaintiffs' opposition to Main Street's effort to intervene indicates that, at minimum, Plaintiffs' and Main Street's interests are not entirely aligned.

In addition to the above considerations, we note that "[o]ur courts favor the swift and efficient resolution of disputes." *Crews*, 319 N.C. at 360, 354 S.E.2d at 505. In *Crews*, the State and the intervenor had concurrent interests in obtaining reimbursement of child support payments from the defendant. When the State and the defendant submitted a proposed settlement to the trial court, the other interested party moved to intervene. The trial court denied the motion and this Court affirmed. Our Supreme Court reversed. In addition to finding that the intervenor met the requirements of N.C.G.S. § 1A-1, Rule 24(a)(2), the Court held that

> [a]llowing the [S]tate to settle [the] defendant's obligation to pay public assistance arrearages without providing [the intervenor] an opportunity to litigate in this action her own claim for arrearages inevitably prolongs and complicates the litigation process. This is precisely the type of situation contemplated by the rule for intervention of right.

*Id.* at 360-61, 354 S.E.2d at 505; *see also Coca-Cola Bottling Co. Consol. v. Durham Coca-Cola Bottling Co.*, 141 N.C. App. 569, 578, 541 S.E.2d 157, 163 (2000) ("The interests of judicial economy and efficiency weigh in favor of suits that will settle all of the issues in the underlying controversy."). We find this reasoning instructive in the present case.

IV.  Conclusion

For the foregoing reasons, we reverse the trial court's order and hold that Main Street is entitled to intervene in Plaintiffs' lawsuit pursuant to N.C.G.S. § 1A-1, Rule 24(a)(2).  Because we hold that the trial court's order must be reversed, we do not reach Main Street's additional argument regarding discretionary intervention under N.C.G.S. § 1A-1, Rule 24(b)(2).  The case is remanded to the trial court with instructions to enter an order allowing intervention by Main Street.

REVERSED AND REMANDED.

Judges BRYANT and ENOCHS concur.